MISSOURI PACIFIC RAILROAD COMPANY *v.* HEARD.

4—2559

Opinion delivered June 6, 1932.

1056

*R. E. Wiley* and *Richard M. Ryan,* for appellant.

*John L. McClellan,* for appellee.

BUTLER, J.   Mrs. Allie Heard, the appellee, who lives on a farm in the vicinity of Malvern, was visiting relatives in California in the month of December, 1930. When she desired to make the return trip home, she was informed by a railroad agent at Redlands, California, that, by purchasing a through ticket to Little Rock instead of to Malvern, she could get excursion rates and her fare would be cheaper, and that she would be put

off at Malvern when she indicated that she wanted to do so. At the same time she was told what train to take and at what point it would be necessary for her to change trains. Appellee purchased a ticket as suggested by the agent and began her journey. She was not put off at Malvern or carried to Little Rock, but was put off at Arkadelphia.

Appellee brought suit against the appellant alleging a wrongful ejectment from the train at Arkadelphia, and that in ejecting her the conductor of the train was guilty of rude and insulting conduct; that he jerked her from the train to the sidewalk where she would have fallen had she not been supported by the negro porter who was standing there; that she was injured to such degree that a malady from which she had at one time suffered and of which she had been cured, recurred, and that she had never been well since that time. She further alleged that as a result of the insulting conduct of the conductor and the manner in which she was ejected from the train she was humiliated. She prayed punitive damages in addition to compensatory damages.

An answer was filed denying all the material allegations of the complaint, and alleging, as an affirmative defense, the negligence and carelessness of the appellee in getting on the wrong train when, by the exercise of ordinary care she would have known that the train upon which she elected to ride did not stop at Malvern.

The material evidence in the case in behalf of the appellee was contained in her testimony and that for the appellant in the testimony of the conductor who operated the train from Texarkana to Little Rock and his negro porter. The testimony was in direct and sharp conflict, but as the jury accepted the testimony of the appellee as true and rejected that of the conductor and porter where it was in conflict with that of the appellee, under the settled rule we must accept the judgment of the jury if there is any substantial evidence in support of the conclusion reached.

The material testimony of the appellee, briefly stated, is as follows: She lives on a farm near Malvern, and visited relatives in California in the year 1930. About the 20th of December of that year, she went to the railroad office at Redlands, California, and told the station agent that she wanted to purchase a ticket from there to Malvern. She was informed by the agent that by purchasing a ticket through to Little Rock she could have the benefit of a special rate which would be considerably less than if she bought a ticket to Malvern. She was also informed at that time that she could get off at Malvern, notwithstanding the fact that her ticket read to Little Rock, and she was given instructions as to what train to take and where to transfer on her journey. It was necessary for her to change trains at El Paso, and there she informed the railroad officials of her intention of proceeding to Malvern, Arkansas, and was directed as to what train to take and again told that she would be put off at Malvern on indicating a desire to that effect. She made no further change after leaving Fort Worth, but the train crew was changed at Texarkana, and from there on through Malvern and Little Rock the train was controlled by the conductor, Charles A. Guidici. When he made his first round after leaving Texarkana, the appellee presented her ticket and told him that she wanted to get off at Malvern. He left, and a little later came back and informed her that the train did not stop at Malvern, but that he would put her off at Prescott. Some argument ensued and the appellee refused to get off at Prescott. Later on the conductor told her that he was going to stop the train at Arkadelphia and put her off there. She told him of the instructions she had received in California and throughout her journey, explaining that her husband would be waiting for her at Malvern and insisting that she be put off there. The conductor, however, continued to refuse to do so, insisting that she would have to get off at Arkadelphia. The appellee then said that if she was not allowed to get off at Malvern as she wanted to do, she would prefer to be taken on to

Little Rock. The conductor became obstinate and insisted that he would put appellee off at Arkadelphia, and that he would neither let her get off at Malvern nor take her on to Little Rock.

Witness was traveling alone, and became perturbed by the domineering conduct of the conductor, and when Arkadelphia was reached, over her protestations, the conductor took her grips and bundles, took her by the arm and led her down the aisle displaying great ill humor and speaking roughly and insultingly to her in the presence of a number of passengers in the coach who heard her begging him to either let her off at Malvern or take her on to Little Rock. The conductor, however, continued to lead her down the aisle and through the door of the car on to the platform, and there seized her by the arm and violently jerked her downward as she was stepping off the train, causing her to fall and to suffer injury to her side. She would have fallen to the ground had she not been caught and upheld by the negro porter, who expressed concern for her situation and offered assistance, but the conductor reprimanded the porter and ordered him to board the train which continued on its way leaving appellee alone on the platform at Arkadelphia.

The agent at Arkadelphia offered her some assistance and advised her to go to a hotel and not to spend the night in the station. She explained to him why she was at Arkadelphia and told him that she had been compelled to get off there against her will. The agent called Little Rock to ascertain why this was so, and, after talking a while, told the appellee "that things were all balled up that night, and he would have to find out about it later." Appellee testified that the conduct of the conductor, while she was on the train and while she was being ejected from it, and his language frightened and greatly embarrassed her, and that, when she found herself in a strange town alone at night, her humiliation and fear increased; that she finally secured the services of a cab driver who first took her to a private dwelling where she hoped to

spend the night; that she was denied admission there, and then was taken to a hotel where she spent a wakeful night in pain and much discomfort. After having paid for her lodging at the hotel and the price of a ticket back to Malvern, the appellee did not have sufficient money to buy her breakfast and left without eating. Her side gave her pain, and she continues to suffer. Prior to this occasion she had suffered from a disorder peculiar to her sex, but she had been cured and had had no symptoms of the disorder for more than a year. Immediately after her experience the malady recurred. Appellee and her husband are people of moderate financial circumstances. She therefore administered her own remedies in her own way, depending on the experience she had gained when she was ill before. Not obtaining relief, she consulted with physicians, who prescribed for her, but she had not been relieved. Appellee is a housewife and accustomed to do all the work, but since the recurrence of her illness she has been able to do only a part of it. These facts show that the appellee suffered an actionable wrong by being put off the train at Arkadelphia over her protest and against her will.

The appellant has assigned as error the introduction of that part of the appellee's testimony in which she told of the information she had received in California and along the way by which she directed her conduct. It is insisted that this testimony was incompetent because the appellant company was not bound by any declaration of agents of other railroads in California, New Mexico and Texas. The court so told the jury. But it must be remembered that, in addition to the denial of the allegations of the wrongful conduct of appellant's conductor, an affirmative defense was interposed—i. e., that appellee was herself negligent in purchasing a ticket to Little Rock, when her destination was Malvern, and in taking a train which did not stop at the latter point. The evidence, therefore, was competent for the purpose of showing exercise of ordinary care by appellee in purchasing her ticket and in the

conduct of her journey. She remained on the same train she took at Fort Worth, at which place she had received instructions to the effect that traveling on that train she might get off at Malvern. The court limited the jury's consideration of this testimony to the question of the exercise of ordinary care on the part of the appellee, and we are of the opinion that it was properly admitted for that purpose.

Objections were made and exceptions saved to that part of the testimony of appellee relative to the alleged wrongful conduct of the conductor in the presence of other passengers and the fact that she could hear their comments. This, of course, rendered the humiliation of appellee greater and was competent testimony on the question of punitive damages.

Objection was also made to questions being propounded the conductor and requiring him to return answers relative to any efforts he made to get in touch with his train dispatcher at Little Rock for permission to stop his train at Malvern after he learned that appellee was on the train through mistake and under the impression that she would be put off at Malvern. Some of the questions were not answered and others only in an indirect manner, but from the answers given the inference arose that no such effort was made, the witness explaining that he was under no duty to make any such effort, and that it was inconvenient for him to do so. The conductor testified regarding his customary effort to accommodate passengers and as to his politeness to them and to appellee. These questions were permissible on cross-examination as tending to negative the claim he made as to his conduct toward passengers generally and to appellee in particular.

Objections were saved to the giving of instructions requested by the appellee, the modification of certain instructions requested by the appellant, and to the giving of them as modified, and to the refusal to grant other instructions requested by the appellant. These objections are preserved and argued in appellant's brief. It

would serve no useful purpose, however, to discuss in detail the arguments advanced by the appellant to sustain its contention in these particulars. Suffice it to say that we have examined the instructions with care, and find no prejudicial error in any of them, as they fully and fairly presented the law governing the issues in the case.

The principal contention made by the appellant and the one we deem worthy of most serious consideration is that the compensatory damages awarded were excessive, and that the evidence did not justify the award of exemplary damages. It is argued with much earnestness that the appellee was not injured but was just angry because she had to get off the train and spend the night at Arkadelphia. Doubtless the appellee was angry, but, if her testimony is true, and it has been accepted as true by the jury, it is not unreasonable that she was in this frame of mind. Her testimony as to her alleged injuries and their resultant effect, however, was not disputed by any evidence (except that she made no complaint of physical suffering to the cab driver or the hotel keeper that night), and goes much further than the suggestion of appellant indicates. This testimony has already been set out, and it is unnecessary to restate it. In our opinion it is sufficient to justify the damages awarded by the jury.

Where the element of wilfulness or conscious indifference to the feelings of others is manifest, damages in addition to compensatory damages are justified by way of punishment for the willful misconduct, although the personal injury inflicted be but slight. *Barlow* v. *Lowder*, 35 Ark. 492. Where there are no circumstances which tend to mitigate or excuse insulting and profane language to another, malice will be implied, and where a personal injury is inflicted, although it be but slight, punitive damages are justified when the conduct attendant upon it shows a willful disregard of the rights and sensibilities of the person injured.

Here the evidence tends to show that the party injured was a woman traveling alone with no one to pro-

tect her, and that without any justification or excuse, but as a result of an ill-governed temper, the conductor in the presence of other passengers used language to, and about, the appellee calculated to embarrass and humiliate her, if not to put her in actual fear. This, coupled with the violence with which the conductor ejected her from the train, warranted the jury in concluding that the conduct of the conductor was willful and malicious and a wanton disregard of the safety of the appellee. *Railway* v. *Davis*, 56 Ark. 51, 19 S. W. 107. There is no fixed rule, nor indeed can there be, for measuring the amount of exemplary damages a jury may award. It must be left largely to their own judgment according to the circumstances of the case. In the instant case the trial court heard the evidence and observed the manner and demeanor of the witnesses upon the stand and refused to interfere with the verdict of the jury. We are therefore unable to say that such verdict was excessive or that the trial court erred in holding that it was not. There is substantial evidence to support the verdict, and, no error appearing, the judgment is affirmed