HERBERT F. LAW, who was sued with Alba Watts Davis, Defendant Below, Appellant, v. DELIA GALLEGHER, Plaintiff Below, Appellee.

*(February* 15, 1938.)

WOLCOTT, Chancellor, LAYTON, C. J., RICHARDS, ROD-
NEY and SPEAKMAN, J. J., sitting.

*William Prickett* for appellant.

*Knowles* and *Knowles* for appellee.

Supreme Court, No. 1, October Term, 1937.

LAYTON, C. J., delivering the opinion of the Court:

The refusal of the Court below to direct a verdict for the defendant, which is the first specification of error, and the admission of evidence, over the objection of the defendant, purporting to show that he was, to some extent, under the influence of intoxicating liquor, which is the third specification, bring in review the conduct of the defendant, and compel an analysis of the testimony from which it is to be determined whether his operation of the automobile was in wanton disregard of the plaintiff's rights.

The statute was considered by the Superior Court on demurrer to a prior declaration filed in this case, and in *Gallegher v. Davis et al.*, 7 *W. W. Harr.* (37 *Del.*) 380, 183 *A.* 620, it was rightly held that negligence, as that term is properly understood in law, was eliminated as a basis of liability. There it was pointed out that in strictly accurate use the terms "wilful" and "wanton" are clearly distinguishable, in that wilfulness includes the element of actual intent to inflict injury, while in wantonness there is an implied or constructive intent.

The statute employs both terms, and it would seem that a distinction was intended. Wanton conduct, resulting in injury to another, therefore, may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within

the circumference of the conduct is reasonably apparent, although harm to such other is not intended.

The plaintiff, in the language of the statute, has alleged that the defendant acted in wanton disregard of her rights. The wantonness of conduct is confined to the speed at which the defendant, in the circumstances, drove his car; and the question is whether the evidence, considered in a light most favorable to the plaintiff, supports her charge.

The third assignment of error will be considered first. During the examination of Mrs. Davis, the co-defendant as to whom the action had been discontinued, plaintiff's counsel asked, "Did you smell any peculiar odor on him?" Objection was made that it was not alleged as a cause of action that the defendant was not in a fit condition to operate an automobile. To this plaintiff's counsel said, "I don't say he wasn't in a condition to drive." "I don't say that there was an intoxication. All I can show you is a peculiar odor and actions." The Court then inquired whether counsel proposed to show that the witness "detected any odor of alcoholic liquor," and the answer being in the affirmative, the objection was overruled, and exception was taken. The witness then answered that she noticed an odor of alcoholic drink. Other witnesses, over the objection of the defendant, were allowed to say that they noticed an odor of alcohol about the defendant. The witnesses agreed that the defendant's face was bloody, that he had a big cut on his forehead; that he seemed dazed, that he was swearing, and that he did not know what he was doing. As one witness put it, "I think I did ask him how did it come to happen, but he was so confused and he was just walking back and forth and throwing his hands and saying that he didn't know how it had happened." As another put it, "He couldn't keep himself still. He seemed to be walking around."

■■ The offer of the testimony was based on the supposition that it tended to show a reasonable probability of

driving wantonly as arising from indulgence in intoxicating liquor, and it was seemingly admitted in evidence as a circumstance from which such inference might be drawn. The declaration did not charge the defendant with being intoxicated or under the influence of intoxicating liquor, although it did allege other facts and circumstances which combined were supposed to manifest wanton driving. The rule of pleading laid down in *Campbell v. Walker,* 1 *Boyce* (24 *Del.*) 580, 76 *A.* 475, 476, has been repeatedly approved and followed. There it was said that the principles of pleading work no hardship in requiring a plaintiff to disclose the acts for which he calls upon another to respond in damages, and that, consequently, "the time, place and circumstances of the matter in action, so far as relied on and within the knowledge of the party, must be specified with a fullness and fairness that will reasonably apprise the opposing party of what he is required to meet." By this standard, the plaintiff, by proper allegation, should have disclosed to the defendant her purpose to rely upon his indulgence in intoxicating liquor as a circumstance of the matter in action. Not having done so, the admission of the testimony was substantial error.

 Apart from the question of admissibility of the testimony under the pleadings, essential error lay in the fact that the testimony was not probative in character. The plaintiff was allowed to prove mere odor of alcoholic liquor about the defendant's person. Standing alone, the odor of liquor on the breath of a person does not prove, nor is it evidence of, intoxication or of being under the influence of intoxicating liquor. In combination with other facts it may be evidential. *Critzer v. Donovan et al.,* 289 *Pa.* 381, 137 *A.* 665; *Chairez v. State,* 98 *Tex. Cr. R.* 433, 265 *S. W.* 905. Here, the plaintiff gave no testimony that the defendant had drunk intoxicating liquor at any time during the trip lasting several hours. No witness expressed the opinion

that the defendant was intoxicated, or under the influence of intoxicating liquor. No witness even said that the odor of alcoholic liquor came from the defendant's breath. His conduct after the collision, relied upon by the plaintiff and expressed by her counsel as "peculiar actions," was a natural and probable result of severe head injury and shock, and was as consistent with sobriety as with intoxication. The jury were allowed to draw an inculpatory inference, not from fact, but from suspicion of fact, thereby to find support for their ultimate conclusion that the defendant had operated his car in wanton disregard of the plaintiff's safety.

In support of the trial court's ruling, the plaintiff cites *Milhouse v. Stroud,* 134 *S. C.* 17, 131 *S. E.* 619; *Barrett v. Harman,* 115 *Cal. App.* 283, 1 *P.* 2d 458; and *Learned v. Hawthorne,* 269 *Mass.* 554, 169 *N. E.* 557. In the first case, although the complaint did not allege that the defendant was under the influence of intoxicating liquor, such testimony was admitted. The ruling is opposed to the theory of pleading which obtains in this jurisdiction. Compare *Critzer v. Donovan et al., supra.* In the second case, the pleadings are not given. It appears that evidence of odor of liquor on the defendant's breath was not objected to, and the complaint was that the plaintiff's counsel was guilty of misconduct in intimating to the jury that the defendant was intoxicated. In the third case the particulars of the complaint are not set out; nor does it appear that objection had been made to direct testimony of odor of whiskey on the defendant's breath.

It remains to be considered whether the Court below erred in not directing a verdict for the defendant.

On Sunday, June 24, 1934, the defendant purposed to drive from his home near Wilmington to a farm in Maryland on a business errand. His wife and the plaintiff, as

his guest, accompanied him in his new V8 Ford Coupé. After attending to his errand, the three ate a picnic lunch, and they started home about one o'clock in the afternoon. On the way home, the defendant was driving east on the public road leading from Cooch's Bridge to Christiana. This road had a crowned hard surface about twelve feet in width covered with a tar preparation. The road surface was not smooth. Salem Lane comes into the road at right angles about two and one half miles easterly from the bridge and runs south from the road about one-fifth of a mile to Salem Church. At the point of intersection the road is straight for two hundred yards in either direction. At the time of the accident there was a hedge seven and one half feet high and in bloom on the south side of the road, which reciprocally obstructed the view of persons on the road and lane. The hedge was set far enough back from the south side of the hard surface of the road that a person twelve feet from edge of the hard surface would have a clear view in each direction for at least two hundred yards. There was no warning sign on the road west of the lane indicating an intersection, but at some point west of the lane there was a sign "School Go Slow." As the defendant proceeded east on the road toward its intersection with the lane, Mrs. Davis was going north on the lane expecting to turn left, or west, on the road. She stopped at a stop sign located on the lane near the intersection, and then proceeded slowly toward the road. To this extent the facts are not in dispute.

The testimony as to the speed of the defendant's car came from the plaintiff, from Mrs. Davis who saw it about 100 feet away as she emerged from the lane and passed the hedge, from the witnesses who heard the approach of the car but did not see it, and from skid marks on the surface of the road.

The plaintiff testified that the defendant was in the driver's seat; that she was on the right, with Mrs. Law in

the middle; that shortly before the accident an automobile passed Law very rapidly and without giving any warning signal; that Law became provoked, tried to chase the passing car, and started driving "at a very fast speed," saying "I will try to overtake him and do exactly what he did"; that Mrs. Law told him not to drive so fast, saying that if he did not she would get out of the car, to which the defendant replied that he would not stop and that she, Mrs. Law, could not get out. The plaintiff could form no estimate or idea of the speed at which they were going, and characterized it as "just about flying."

At this point the evidence supporting the charge that the defendant was trying to overtake the car that had passed him without warning will be considered. From the record of the testimony of the plaintiff on her direct examination this appears: Q. "Now what do you recall shortly before the accident in reference to passing vehicles, one way and the other?" A. "I just remember that shortly before the accident an automobile passed Mr. Law's car." Q. "In what direction was it going?" A. "I couldn't exactly say." Q. "Did the automobile pass the car in which you were riding?" A. "Yes, Mr. Knowles, it did." Q. "In which direction was it going?" A. "I couldn't exactly tell you." Q. "You couldn't exactly tell." A. "No, sir."

In cross examination on the same point the following questions and answers appear: Q. "Now, was this car going in the opposite direction that you were?" A. "I couldn't really tell you. It was travelling at such fast speed and I really couldn't tell you." Q. "Now, can you tell the Court and Jury whether this car was going in the same direction you were or going in the other way?" A. "I couldn't exactly tell you, Mr. Prickett, because I don't know much about the country, and I couldn't tell you in which direction it was going." Q. "You were going back toward the Law's house weren't you?" A. "Yes, Mr. Prickett." Q. "Was this

car going back toward the Law's house or was it going the other way?" A. "I am sorry, I couldn't exactly tell you." Q. "So that, I understand, you don't know whether the car was going in the same way you were or going in the other way?" A. "No, sir, because I don't know much about the country." By the Court: Q. "Suppose this was the car in which you were riding (indicating), did it pass you from the rear or did it come from the other direction?" A. "All I remember was this car passing Mr. Law's car." Q. "Well was it going in the same direction or in the other direction?" A. "Going in the same direction as Law's car." By defendant's counsel: Q. "You are sure, now, it was going in the same direction as Mr. Law's car." A. "Yes, Mr. Prickett." Q. "Could it have been going in the opposite direction?" A. "I don't know much about the country nor the directions."

Defendant's counsel attempted to learn from the witness how far from the scene of the accident the car passed the Law car. Q. "How long was it before the accident that you saw this other car that you mentioned?" A. "Which car do you mean, Mr. Prickett?" Q. "Well did you see any other car on the way back?" A. "I seen several cars." Q. "Did you see any car that particularly attracted your attention?" A. "No, I didn't." Q. "Do you remember this other car that you mentioned when you were on the stand?" A. "The car that passed Mr. Law?" Q. "Yes." A. "Yes, sir." Q. "How long was it that you saw that car before the accident?" A. "A very short distance." Q. "Well, about how far?" A. "I couldn't exactly tell you." Q. "About three or four miles?" A. "I couldn't exactly tell you." Q. "How many minutes before the accident was it?" A. "I couldn't say." Q. "Might it have been as much as half an hour before the accident?" A. "I couldn't say because I don't anything about the country and I couldn't call the hour nor the distance." Q. "Might it have been as much as a half an hour

before the accident?" A. "I couldn't exactly say." By the Court: Q. "Haven't you any idea as to how long it was between the time the car passed and the accident?" A. "No, sir, I haven't." Q. "No idea at all?" A. "No." By her counsel on recall: Q. "Can you tell the Court and the jury about where on the highway with relation to Cooch's Bridge this automobile passed you?" A. *"Before* we passed the bridge; just a short distance *before* we passed the bridge." In cross examination: Q. "Mr. Knowles asked you where the car passed your car and you said you weren't familiar with the country, so that you couldn't say where it passed you; do you remember that?" A. "I said *after* we had passed the bridge, Mr. Prickett." And in reply to a similar question, she said "It passed a short distance *past* the bridge" Q. "How far is Cooch's Bridge from the scene of the accident?" A. "I don't remember." Q. "What does Cooch's Bridge look like?" A. "I couldn't tell you, Mr. Prickett. We were driving so fast I couldn't see." Q. "You don't know what Cooch's Bridge looks like." A. "No." Q. "You don't know how far Cooch's Bridge is from the scene of the accident?" A. "No." Q. "And you don't remember how long it took you to get to the scene of the accident?" A. "No." Q. "You don't remember what this car looked like, do you." A. "No." Q. "You don't remember how many people were in it, do you?" A. "No." Q. "Is Cooch's Bridge a village?" A. "I couldn't tell you, Mr. Prickett."

With respect to the car which the defendant was attempting to overtake: Q. "When you came near this intersection, this place in the road where the accident happened, was the other car that you told us about, this car that passed you, in sight?" A. "I couldn't tell you, Mr. Prickett, because Mr. Law was driving so fast I was so scared I couldn't really tell you." Q. "You don't know whether it was in sight or not?" A. "I couldn't tell you." Q. "And you

don't know, if it wasn't in sight, how long it had been gone?" A. "I couldn't tell you."

With respect to the position of the Davis car at the time of the accident: Q. "What I would like you to tell me was where you saw the Davis car, the car that you were in hit?" A. "I couldn't tell you, Mr. Prickett. I don't know nothing about the country." Q. "I know you don't know anything about the country, Miss Gallegher, but you did see this other car, this car that you were in ran into; you did see that car before the accident didn't you?" A. "No, I didn't. I just caught a very slight glimpse of it." Q. "Can you tell the Court and jury about where it was when you saw it?" A. "I couldn't tell you Mr. Prickett." Q. "Well, give us your best idea where it was." A. "I couldn't exactly say." Q. "Was it right in front of your car?" A. "I wouldn't say, Mr. Prickett." Q. "Well, where would you say it was?" A. "I couldn't tell you that."

Mrs. Davis testified that as she approached the road she looked both ways and saw no car to her right or the east; and that from the time she left the church, while proceeding slowly along the straight lane two tenths of a mile, she had no recollection of seeing any other car pass in front of her. James Hewes, whose testimony will be noticed later, gave no evidence as to the passage of any other car prior to the accident, although his attention was called to the sound of the defendant's car. Aubrey McMullen was asked by plaintiff's counsel "When you started out to the highway from the church and got to the scene of the accident, had any car passed going in an easterly direction?" His answer was, "I hadn't seen any."

The plaintiff attempted to prove by another witness the presence of another car going in an easterly direction a short time before the accident. Her testimony was that she was driving west on the road and saw a car going east "a

short way" from the scene of the accident. She testified that there was a knoll "not very far" from the scene of the accident and that she was "not very far" from the knoll when she observed the automobile going east, but she was unable in any manner to connect this automobile with the defendant.

The evidence, then, with respect to the defendant's alleged attempt to overtake the passing car comes from the plaintiff alone. Her repeated answers to plain, understandable questions, suggestive of *"non mi recordo"* of famous memory, are eloquent of the unreliability of her testimony in this respect. But, giving full measure to her testimony, all that it amounts to is that the defendant was driving very fast.

The one other witness who testified to seeing the defendant's car in motion was Mrs. Davis. She testified that she was driving her car on Salem Lane toward the intersection, and that as she neared the stop sign she heard the defendant's car coming "at a high rate of speed," and that as she passed the hedge on her left, she saw the car about 100 feet away "coming very fast." She further testified that she stopped her car about fifteen inches from the paved portion of the road intending to turn left thereon; that she first heard the screeching of brakes, then a "noise that sounded like a skyrocket," and then the defendant's car "seemed to lift from the road and came over at me just in a circle, hitting the point of the bumper first"; that it turned around and went over on the opposite side of the road, and turned over on its left side; and that the left rear tire of the defendant's car was flat. Under cross examination she agreed that the noise "like a skyrocket" was the sound of a tire blowing out, and that if this had not occurred the Law car would have passed without colliding with hers; and she testified that the sound of the screeching of the brakes came *after* she had become visible to the Law car

approaching from her left, and not until she had stopped her car.

The general rule is that a person of reasonable intelligence and ordinary experience may testify as to the speed of vehicles. The plaintiff, from her own testimony hardly qualifies for she had ridden in an automobile only twice before. To her the speed may well have seemed to be "just about flying." Mrs. Davis saw the car when it was about 100 feet away. She had stopped her car within fifteen inches of the paved portion of the road, and it was coming almost directly at her. If its speed was forty-five miles an hour, she had for observation about one and one-half seconds, and less than that if the speed was, in fact, greater. She gave no opinion as to the speed of the car, but contented herself with the expressions, "very fast," and "at a high rate of speed."

James Hewes testified that he lived about 350 feet West of the scene of the accident; that he was in his kitchen at the rear of his house eating; that his attention was attracted by an unusual noise of a car running very fast, and that he heard the "squealing" that tires make when brakes are strongly applied.

It is not disputed that skid marks appeared on the surface of the road about 100 feet in length. These marks ran approximately in a straight line, the mark of the right hand wheels beginning about two feet from the right edge of the pavement and ending about fifteen inches from the edge.

The testimony produced on the part of the defendant will be briefly noticed, for the reason that the evidence should be viewed in a light most favorable to the plaintiff. Apart from his denial supported by a number of witnesses, that he had had nothing intoxicating to drink, he and his wife denied that he had become provoked at a car passing him without warning. They testified that no car passed

them in either direction from Cooch's Bridge to the point of the accident; that he made no attempt to overtake any car; that his wife did not remonstrate with him for driving so fast; that he was driving from 40 to 45 miles an hour when suddenly, when he was about 90 feet away, Mrs. Davis' car came out of the lane in front of him; and that he applied his brakes with all the power he had as soon as he saw her car, despite which his car slid into hers. He further testified that he was severly injured about the head, was supposed to have sustained a fractured skull, and that he had no clear recollection of what happened after the accident.

The issue was not whether the defendant was driving his car at a high rate of speed, but whether he was driving at such speed as to evidence a conscious indifference to consequences in a situation where probability of injury was reasonably apparent. There was no evidence of actual speed, not even by opinion. There are expressions in the record such as, "very fast," "a high rate of speed," "just about flying," indicative of speed. Such expressions are relative. A speed that would appear very fast or unreasonable to one, might seem moderate and reasonable to another; and where, as here, a high rate of speed was entirely lawful, for by the statute, in the open country, a speed in excess of forty-five miles an hour for a distance of one-quarter of a mile, is only *prima facie* evidence of reckless driving, the expressions used to indicate the speed at which the defendant was driving were meaningless, and furnished no basis for a finding that the defendant drove at a wanton speed.

In *Presser et al. v. Dougherty,* 239 *Pa.* 312, 86 *A.* 854, the expression "at great speed" was held to be indefinite and vague and without standard, and insufficient to support a finding of negligent speed. In *Swayne v. Connecticut Co.,* 86 *Conn.* 439, 85 *A.* 634, 636, 737, the expression, "Like a chain of lightning" was held to be entitled to little weight

as a definite statement of speed. In *Bates v. Escondido, etc., School District,* 9 *Cal. App.* 2d 43, 48 *P.* 2d 728, it was held that such expressions as "a rapid pace," "fast," "too fast" could not convey any idea of actual speed, but were mere expressions of comparative opinion meaning little in law. In *Seager v. Foster,* 185 *Iowa* 32, 169 *N. W.* 681, 682, 8 *A. L. R.* 690, the admission in evidence of the expression, "he was coming pretty fast," was held to be erroneous, as the jury could derive no information from the answer given and could not have based a finding of any definite speed therefrom. In *Whalen v. Mutrie,* 247 *Mass.* 316, 142 *N. E.* 45, the expression, "fast," was held to be too indefinite to warrant a finding of negligence. In *Whitney v. Sioux City,* 172 *Iowa* 336, 154 *N. W.* 497, the expression, "we were going too fast" was held to be a mere conclusion, and not a statement of fact as to speed. In *Alabama G. S. R. Co. v. Hall,* 105 *Ala.* 599, 17 *So.* 176, 179, the admission of a statement of a non expert witness that the speed was dangerous was held to be error on an issue of "wanton and reckless negligence." In *Sarver v. Morrow,* 121 *Conn.* 697, 183 *A.* 739, the plaintiff sued under a "guest statute" similar to our own. There was a directed verdict, and the plaintiff appealed. Testimony of a witness that the speed of the offending car was "like lightning," was held to be entitled to little weight as a definite statement of the speed of the car.

In *Foley v. Boston & M. R. R.,* 193 *Mass.* 332, 79 *N. E.* 765, 766, 7 *L. R. A.* (*N. S.*) 1076, the plaintiff, a passenger in the defendant's passenger car, was standing near an open door of the car. A sudden jar caused another passenger to be thrown against him which caused the plaintiff to fall off the train. In sustaining exceptions to a judgment received by the plaintiff, the Court, in commenting on evidence as to the jar and speed of the train, said:

"It is true that the speed was described as 'swift,' and the jar or lurch as 'quite violent,' 'terrible,' 'awful,' 'very severe,' and 'unexpected.' Mere expletive or declamatory words or phrases as descriptive of speed or acts unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of a specific physical fact, and depending generally upon the degree of nervous emotion, exuberance of diction, and volatility of imagination of the witness, and not upon his capacity to reproduce by language a true picture of a past event, are of slight, if, indeed, they are of any, assistance in determining the real character of the fact respecting which they are used."

It is not necessary to consider whether expletive expressions indicative of speed may not have evidential value in certain circumstances, where, for example, at railroad crossings, road intersections, city streets, or in other situations of known danger, a strictly cautious speed is indicated or required. See *Johnsen v. Oakland, etc., Ry.*, 127 *Cal.* 608, 60 *P.* 170; *Tutie v. Kennedy, (Mo. App.)* 272 *S. W.* 117; *Illinois Central R. Co. v. Ashline,* 171 *Ill.* 313, 49 *N. E.* 521; *Davis v. Smitherman,* 209 *Ala.* 244, 96 *So.* 208.

Wantonness of speed as determined by sound rests on an even less substantial basis. It is a matter of common knowledge that the noise made by a motor vehicle proceeding on a highway is dependent not only on its mechanism, but also on the kind of tires and the character of the road surface. It is also true that the speed of the motor, and its sound, have no relation to the speed of the car if the clutch is out. Generally speaking, the noise made by a motor vehicle is not deemed sufficient basis upon which one may predicate an opinion as to its speed. *Huddy, Ency. Auto Law,* 15-16, 350; *Annen v. Harrell, (La. App.)* 143 *So.* 76; *Challinor v. Axton,* 246 *Ky.* 76, 54 *S. W.* 2d 600; *Campbell v. Sargent,* 186 *Minn.* 293, 243 *N. W.* 142; *Wright v. Crane,* 142 *Mich.* 508, 106 *N. W.* 71; *Harnau v. Haight,* 189 *Mich.* 600, 155 *N. W.* 563. *See also,* 2 *Jones Ev.,* § 362; *Campbell v. St. Louis & S. Ry. Co.,* 175 *Mo.* 161, 75 *S. W.* 86. But, whether the rule is an absolute one, applicable to all situations, or whether in situations where a cautious speed

is known to be required, the noise of a motor vehicle in its progression may not have some evidential value, need not be determined. Here the travel was on a country road. The lawful rate of speed, in any view, was great, and in the circumstances, testimony as to the noise made by the defendant's car furnished no factual basis for the determination of wanton speed.

There is no dispute concerning the skid-marks, their length or appearance. The plaintiff made no attempt to establish the probable speed of the car by marks of the tires on the road surface; but the defendant produced a member of the State Highway Police who qualified as an expert. He testified, generally, that a Ford Coupé with four wheel brakes, in good condition, at a speed of 45 miles an hour will stop in about 100 to 105 feet. The evidence was not particularly enlightening. It is apparent that the distance at which a car can be stopped at a given speed depends somewhat on the character of the tires and of the road surface. It was not brought out, from the tests made by the witness, whether the tires and the road surface were substantially similar to those presented in the instant case. Further, the defendant's car turned over, and it is a matter of conjecture how far it might have gone had it remained on its wheels. However this may be, this evidence, like the evidence of the noise made by a motor vehicle, while indicative of speed, is not evidence of wanton speed.

The plaintiff cites *Berman v. Berman,* 110 *Conn.* 169, 147 *A.* 568, *Meyer v. Hart,* 110 *Conn.* 244, 147 *A.* 678, *Potz v. Williams,* 113 *Conn.* 278, 155 *A.* 211, *Norton v. Puter,* 138 *Cal. App.* 253, 32 *P.* 2d 172, and *Fulghum v. Bleakley,* 177 *S. C.* 286, 181 *S. E.* 30, as illustrative of conduct deemed to be wanton. It will serve no useful purpose to analyze the facts and circumstances of the cited cases. It is sufficient to say that the situations there presented are not comparable with the circumstances appearing here. Compare

*Vanderkruik v. Mitchell,* 118 *Conn.* 625, 173 *A.* 900; *Staplins v. Murphy et al.,* 121 *Conn.* 123, 183 *A.* 398; *Gifford v. Dice,* 269 *Mich.* 293, 257 *N. W.* 830, 96 *A. L. R.* 1447, and cases cited in *Gallegher v. Davis, supra.*

The picture presented by the record is this: The road was straight and in open country. There was no traffic. There was no warning sign indicating an intersecting road. There was no evidence that the defendant knew that he was approaching an intersection. The Davis car, as it proceeded toward the road, was not visible to the defendant. The defendant was driving at a high rate of speed. Mrs. Davis knew that a car was coming "very fast." She could have waited until it had passed the intersection; but with the knowledge she had, after stopping at the stop sign, she drove out of the lane, and did not stop her car until it was within fifteen inches of the paved portion of the highway. She saw the defendant's car, and he saw hers at a distance of about one hundred feet. The defendant did not apply his brakes until after her car emerged into his view. Whether she actually drove her car onto the paved portion of the road, as the defendant claims, is immaterial, for, in the circumstances, driving out of the lane and beyond the hedge, and keeping her car in motion until it was almost on the pavement, created an emergency reasonably calculated to cause the defendant to apply strongly his brakes in an effort to avoid a sudden and apparent danger. The defendant may have failed to exercise the best judgment, but he is not to be held responsible unless it clearly appears that he contributed in causing the emergency. Sudden call for action, excitement and lack of time must be considered. He did apply his brakes. The car slid in an approximately straight line, a tire blew out, and the collision occurred.

The burden was on the plaintiff to show by a preponderance of the evidence not only wantonness of conduct on

the part of the defendant, but also that such conduct was the proximate cause of the collision and injury. In actions based on negligence, and the same rule applies where the action is based on wanton conduct, the case should not be left to the jury if there is no evidence of negligence, or if the evidence suggests only a possibility of negligence, or if the evidence is as consistent with the absence of negligence as with its existence. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. *Smith v. First National Bank of Westfield,* 99 *Mass.* 605, 97 *Am. Dec.* 59. Stated otherwise, where the testimony leaves the matter uncertain, and shows that one of two things may have occasioned the injury, for one of which the defendant was responsible, and for one of which he was not, the plaintiff must fail if his evidence does not show that the injury was produced by the former cause, and he must fail, also, if it is just as probable that the injury was caused by the one as by the other. *Searles v. Manhattan Ry. Co.,* 101 *N. Y.* 661, 5 *N. E.* 66. In such circumstances it is not for the jury to guess, and find that the negligence of the defendant was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. *Patton v. Texas & P. R. Co.,* 179 *U. S.* 658, 21 *S. Ct.* 275, 45 *L. Ed.* 361. See, also, *Shaw v. New Year Gold Mines Co.,* 31 *Mont.* 138, 77 *P.* 515; *Meehan v. Speirs Mfg. Co.,* 172 *Mass.* 375, 52 *N. E.* 518; *Vanderkruik v. Mitchell et al., supra;* 1 *Shearman & Redfield Neg.,* § 56; 1 *Thompson, Neg.,* § 162.

Giving to the plaintiff's testimony all of the evidential weight to which it is entitled, and drawing for her benefit all of the inferences which properly may be drawn from the testimony, an inference that the collision of the two vehicles occurred as a result of an application of brakes compelled by a sudden emergency while at a lawful speed, was

as well justified as an inference that the collision was occasioned through the defendant's fault. There is nothing in the evidence, viewed in a light most favorable to the plaintiff, to show that the defendant was, at the time of the accident, driving his automobile in wanton disregard of the plaintiff's safety. The inherent weakness of the plaintiff's case is that it rests on surmise and conjecture. A verdict for the defendant should have been directed.

It is unnecessary to consider the remaining assignments of error. The judgment is reversed, and the cause remanded with directions that judgment be entered for the defendant.