Edna M. WYATT et al., Plaintiffs,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant.

Civ. A. Nos. 1851, 1857.

United States District Court
D. Delaware.

June 21, 1957.

**144**

James R. Morford (of Morford & Bennethum), Wilmington, Del., for plaintiffs.

James L. Latchum and Blaine T. Phillips (of Berl, Potter & Anderson), Wilmington, Del., for defendant.

LAYTON, District Judge.

These cases arise on defendant's motions to dismiss and strike portions of the complaints and on defendant's objections to certain interrogatories and requests for admissions. Both actions result from a collision at defendant's railroad crossing on December 1, 1955, at Nassau, Sussex County, Delaware, when defendant's train ran into the side of plaintiffs' machine.[1]

Plaintiffs seek to recover both compensatory and punitive damages, the latter claim being based upon alleged "gross, wilful and wanton negligence". The defendant has moved to dismiss the claim for punitive damages upon the theory that, in this jurisdiction, such damages are not allowable except in cases of intentional, malicious acts. Being diversity cases, the answer is controlled by the Delaware law on the subject.

There are numerous Delaware decisions touching the question, some of which would seem to bear out defendant's argument that punitive damages may be awarded only in cases where a defendant was guilty of intentional or malicious conduct, while others are flatly opposed to the proposition.

In 1833, the Superior Court first spoke on the subject in Randel v. President, etc., of Chesapeake & Del. Canal Co., 1 Har., Del., 233. This was an action on a covenant under circumstances quite dissimilar from those here. The Court said:

> "There is no malice here as a ground for damage * * * no vindictive or exemplary damages whatever."

Again, in Hysore v. Quigley, 1892, 9 Houst., Del., 348, 32 A. 960, 961, this Court stated that the plaintiff would be entitled to exemplary damages "from the evidence that the defendant willfully, and with malicious intent was guilty of such negligence."

---

1. The defendant is the same in both actions but the plaintiffs are not identical. In C. A. No. 1851, they are Edna Wyatt and George Wyatt, Sr. In C. A. No. 1857, they are the two just mentioned and in addition, Bonnie Lou Warrington. John A. Warrington and George E. Wyatt, Jr.

In Petit v. Colmary, 1903, 4 Pennewill, Del., 266, 55 A. 344, 346, the Court said:

"The general rule as to exemplary damages is that, when an injury has been inflicted maliciously and wantonly, the jury are not restricted to actual or compensatory damages, * * *."

In Farrow v. Hoffecker, 1906, 7 Pennewill, Del., 223, 79 A. 920, 921, it was said:

"Exemplary damages may be allowed for torts committed with fraud, actual malice or deliberate violence or oppression."

To the contrary there are McLane v. Sharpe, 1838, 2 Har., Del., 481; Smyrna, L. & P. Steamboat Co. v. Whilldin, 1843, 4 Har., Del., 228; Jordan v. Delaware & A. Telegraph & Telephone Co., 1909, 1 Boyce, Del., 107, 75 A. 1014, and Stein v. Diamond State Tel. Co., 1929, 4 W.W. Harr. 185, 34 Del. 185, 146 A. 737.

In the McLane case, the Court charged the jury:

" * * * And further, if they believed the circumstances of the case warranted it, they were at liberty to find exemplary damages for the plaintiff; as, if they believed the life of the plaintiff was endangered at the time of the injury by the *gross negligence* of the driver, and that the conduct of the driver at that time *betrayed a disregard of the ordinary dictates of humanity which require every man to succour his fellow man in distress,* and especially when that distress has been caused by his own fault. * * *" (My emphasis)

In the Whilldin case, the Court instructed the jury that:

"Even in case of *gross negligence,* exemplary damages may be given." (My emphasis)

In the Jordan case, the Court charged:

" * * * To justify you in giving exemplary or punitive damages, you must be satisfied from the testimony that the injury complained of was not only committed by the defendant, and was wrongful and un-lawful, but that it was also malicious, or *willful and wanton,* in its character." (My emphasis)

And in Stein v. Diamond State Tel. Co., 1929, 4 W.W.Harr. 185, 34 Del. 185, 146 A. 737, 740, Judge Harrington in a careful opinion for the first time took occasion to comment at some length upon the meaning of the words "malicious", "wilful" and "wanton" which heretofore had been employed in charges to the jury rather loosely and without special definition. He said:

"In Sutherland on Damages (3d Ed.), vol. 2, § 393, the author, in discussing the question of punitive or exemplary damages, says: 'They are allowed when a wrongful act is done with a bad motive or so recklessly as to imply a disregard of social obligations, or when there is negligence so gross as to amount to misconduct and recklessness.'

" * * * 'These damages are allowable only when there is misconduct and malice or what is equivalent thereto. A tort committed by a defendant in the assertion of a supposed right or without any actual wrong intention and without such recklessness or negligence as evince malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment when the doctrine for such damages prevails.'

\*      \*      \*      \*      \*      \*

" * * * Generally speaking, the wrongful acts for which a person may be punished by the award of punitive or exemplary damages must, therefore, be willful, malicious, or wanton in their character. It is true that negligent acts may, in some cases, depending upon their nature, justify an award of such damages, but they must be so gross in their character as to justify the conclusion that they were done willfully or maliciously. McLane v. Sharpe, 2 Har. 481; Smyrna, L. & P. Steamboat Co. v. Whilldin, 4 Har. 228; 2 Sutherland on Damages (3d

Ed.) § 393, supra. Such an inference might be drawn if they were done with a wanton and reckless disregard of consequences to others."

Because of the Stein case, it may be said that there is a discernible trend among the cited authorities in favor of the proposition that punitive damages may be awarded in cases of gross negligence or conduct evidencing a complete and wanton disregard for the safety of others. Yet, it is to be noticed that not only are the Superior Court decisions lacking in uniformity but our Supreme Court has never spoken on the question. Inasmuch as it is my duty here to ascertain, if possible, what result the highest Court of the State would probably reach, an examination of certain of its decisions bearing indirectly on the point must be made.

In Gallegher v. Davis, 1936, 7 W.W. Harr. 380, 37 Del. 380, 183 A. 620, 622, a three judge Court defined the words "wilful and wanton", appearing in the Delaware Guest Statute, 21 Del.C. § 6101, as connoting something more than negligence. It said:

"The distinguishing characteristic of negligence, is carelessness, thoughtlessness, inattention, inadvertence. Negligence is negative in its character and implies nonfeasance. Wilful or wanton conduct is outside of the domain of negligence, for the moment the element of wilfulness, actual or constructive enters, the conduct ceases to be negligent, and assumes the character of maliciousness or wickedness. Wilfulness and negligence are incompatible terms. Absence of intent is a characteristic of negligence. Wilfulness cannot exist without purpose or design. The difference is one of kind, not of degree. There is a clear distinction between wantonness and negligence, as the former term includes the elements of *consciousness* of one's conduct, realization of the probability of injury to another, and *disregard of the consequences.* Likewise, the precision clearly distinguishes wilfulness from wantonness, in that the former includes the element of actual intent to cause injury, while, with respect to the latter, there is included, at most, an implied or constructive intent. But, wilful conduct or wanton conduct culminating in a happening and consequent injury, is more than negligent conduct, and where, as here, the statute defines the actionable quality of the conduct producing the event, as wilful or wanton disregard of the rights of others, it is clear that more than negligence is required as a basis of liability." (My emphasis)

And later, in 1939, the Delaware Supreme Court, Law v. Gallegher, 9 W.W. Harr. 189, 39 Del. 189, 197 A. 479, at page 481, in commenting upon the cited opinion, stated:

"The statute was considered by the Superior Court on demurrer to a prior declaration filed in this case, and in Gallegher v. Davis, 7 W.W. Harr. [380], 37 Del. [380], 183 A. 620, it was rightly held that negligence, as that term is properly understood in law, was eliminated as a basis of liability. There it was pointed out that in strictly accurate use the terms 'wilful' and 'wanton' are clearly distinguishable, in that wilfulness includes the element of actual intent to inflict injury, while in wantonness there is an implied or constructive intent."

Worthy of notice, also, are the comments of the present Supreme Court in State v. Hupf, 9 Terry 234, 48 Del. 234, 101 A.2d 355, 359, where Chief Justice Southerland went to some lengths in defining with precision the words "negligence" and "gross negligence" in a case of manslaughter by motor vehicle. He said:

"But it seems clear from a review of both English and American authorities that negligence, to constitute the basis for the crime of manslaughter, must be something more than ordinary negligence. The distinction between ordinary negligence

and gross negligence has been criticized (see 38 Am.Jur., Negligence, § 43), but it is too firmly grounded in the law to be disregarded. Indeed, the concept of gross negligence as 'wilful or wanton disregard of the rights of others' has received legislative approval in our so-called automobile guest statute. 21 Del.C. § 6101. The later Delaware cases of involuntary manslaughter not only recognize degrees of negligence but define gross negligence as 'such degree of carelessness as was likely to cause death', State v. Benton, 8 W.W. Harr. 1, 38 Del. 1, 187 A. 609; or as negligence 'of such degree as to evidence a reckless disregard for the life or safety of others', State v. Arnold, 3 Terry 47, 42 Del. 47, 27 A.2d 81, 83. The use of these definitions, it may be observed, would seem more helpful to a jury than the vague phrase 'gross or culpable negligence'. See the comments of Chief Justice Layton in the Benton case, 8 W.W.Harr. at page 14, 38 Del. at page 14, 187 A. at page 615.

"The development of the distinction between ordinary and gross negligence in the English law of manslaughter is reviewed in Commonwealth v. Gill, 120 Pa.Super. 22, 182 A. 103. And see the following English cases: Rex v. Green, 7 Car. & P. 156, 173 Eng.Rep. 69; Reg. v. Spencer, 10 Cox C.C. 525; Reg. v. Franklin, 15 Cox C.C. 163; in which the distinction is clearly recognized.

"We think, therefore, that the language of many of our cases defining manslaughter as a homicide resulting from the commission of a lawful act in a negligent or careless manner is, at best, lacking in precision. It may have been intended to convey the idea of that degree of negligence which the law requires, since the later portions of the charges usually refer to 'gross or culpable negligence'; but it would seem desirable, in defining the crime to a jury, to state specifically that the second type of involuntary manslaughter results from the commission of a lawful act in a grossly negligent manner, that is, in a manner evidencing a reckless disregard for the lives or safety of others."

And again, in McHugh v. Brown, Del. 1956, 125 A.2d 583, 585, Chief Justice Southerland took occasion to comment on the words "wilful or wanton" as employed in the Delaware Guest Statute in this fashion:

"That case [Gallegher v. Davis] was subsequently tried and plaintiff had a verdict. On writ of error the Supreme Court approved the opinion of the Superior Court upon the law. Chief Justice Layton defined wanton conduct as follows:

" 'Wanton conduct, resulting in injury to another, therefore, may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended.' Law v. Gallegher, 9 W.W.Harr. 189, 39 Del. 189, 194–195, 197 A. 479, 482.

"The nub of this definition is in the phrase 'conscious indifference'. In homely language it means a foolhardy 'I-don't-care-a-bit-what-happens' attitude. Cf. Gerhauser v. Deemer, 10 Terry 328, 49 Del. 328, 116 A.2d 175.

"Pitfalls lurk in definitions of such concepts, for every case must turn on its facts; but we think that the language of the Supreme Court in the Gallegher case is as near to an accurate definition as can be framed, and we reaffirm it. Incidentally, we observe that the phrasing of the definition in the opinion below—'conscious and timely knowledge of an approach to an unusual danger'—puts the emphasis in the wrong place. It is conscious indifference—the 'don't care' attitude—that characterizes wanton conduct."

Concededly, the four cases just noticed are not directly on point. Three of them are directed at the true meaning of the language of the Guest Act and the other is concerned with a criminal action. But their teaching is important for they tend to throw light upon the meaning of the words "malicious", "wilful" and "wanton". It is plain that gross negligence and wantonness are synonymous and imply a conscious indifference to the life and safety of others, an "I don't care" attitude, from which an inference of malice may be drawn. It is equally plain that "malice" implies actual intent.

With these precise definitions in mind, it appears clearly that the Court in the Colmary case was guilty of loose language in using the terms "maliciously and wantonly" in the same connotation. The same criticism may be made of the language in the Jordan case. Likewise, it would appear that the Hysore opinion [32 A. 961] stating " * * * that the defendant willfully, and with malicious intent was guilty of such negligence" employs incompatible language in the light of the modern definitions. The Randel case and the Hoffecker cases, however, seem to indicate that the existence of actual malice is a condition precedent to the award of punitive damages and, thus, cannot be reconciled with the McLane, Whilldin and Stein cases.

Moreover, defendant points to Downs v. Piersol (Super.Ct.Del.1954, C.A. #940) as the final authority on this subject. There the Superior Court, in an unreported opinion, held in part:

"If there shall be evidence of 'wilful and wanton' disregard of the rights of plaintiffs as the quoted words are defined in Law v. Gallegher [9 W.W.Harr. 189, 39 Del. 189, 197 A. 479 (Sup.Ct.Del.1939)] and Gallegher v. Davis and Law [7 W.W.Harr. 380, 37 Del. 380, 183 A. 602 (Super.Ct.Del.1936)] the Court will make the following rulings upon the issues of punitive damages * * *

"(1) Punitive damages are not recoverable in automobile cases except where the injury or damage was intentional."

While this case superficially represents strong authority for defendant's position, closer examination creates a substantial doubt. In the first place, the opinion is unreported. Secondly, it does not purport to discuss any of the Superior Court cases dealing with the subject, elsewhere cited—indeed, it cites no Delaware decision. Thirdly, it seems to rely squarely upon Davis v. Gordon, 183 Md. 129, 36 A.2d 699, 700, 156 A.L.R. 1109, which states in part:

"The other question, however, the instruction that the jury may award punitive damages, is a new one in this State in cases of automobile accidents. Here we have no rule of comparative negligence. If the defendant is negligent, the negligence resulting in injury, and the plaintiff has not contributed to the injury, the latter is entitled to recover in full for the damage and pecuniary loss. The fact that the act of negligence may be slight and not gross makes no difference. The test is, the damage done. We have many rules of the road all designed and intended to promote the public safety. They have severe penalties for their violation whether there is an accident or not. If all drivers and all pedestrians observed these rules there would not be any accidents. The rules of the road are far more effective than any inflammatory verdicts in making our streets and highways safe for travel. The fear of arrest is more of a deterrent than a verdict in a civil case for damages."

Thus, the Superior Court in this single instance, and without reference to the numerous Delaware authorities on the subject, apparently committed itself to the rationale of the Maryland Supreme Court that criminal penalties for violations of the automobile laws are a more effective deterrent to recklessness

than inflammatory verdicts reflecting punitive damages. Again, it is to be noticed that the rationale of the Davis and the Piersol cases seems to be applicable only in cases involving automobile collisions[2] rather than the entire field of torts. Finally, while the word "intentional" was used by the Superior Court, it was not defined. The Court may have had in mind the inference of intent to be drawn from actions indicating a conscious indifference to human life. For these reasons, it is difficult to regard the Piersol decision as authoritative on the facts here.

■ I am inclined to the view that the McLane, Whilldin and Stein cases represent the weight of authority among the Superior Court decisions, at least insofar as concerns the facts of this case. And, the language of the Supreme Court decisions bearing indirectly upon the subject convinces me that the state of the law in this jurisdiction justifies a conclusion that conduct so reprehensible as to amount to a conscious indifference to the life and safety of others may form the basis for an award of punitive damages. This result appears to be in line with the weight of authority generally.[3]

■ In so holding, a note of warning should be struck. I do not spell out from the Delaware authorities an inclination to award punitive damages freely or, in a somewhat analogous situation, lightly to impose liability under the Delaware Guest Statute.[4] To justify exemplary damages, the questioned conduct must be so shocking as to remove it entirely from the known field of ordinary negligence and place it squarely within the realm of malice, express or implied. Only in such exceptional circumstances ought the public policy sanction the calling into play of those deterring penalties inherent in an award of exemplary damages. Defendant's first motion is denied.

A number of additional motions remain for disposition but, in most cases, the answers would seem to flow logically from the denial of defendant's first motion.

■ First, defendant moves to strike evidentiary matter appearing in paragraphs 3(b), 3(c) and 3(d) of the Complaint.[5] Concededly, evidentiary matter in a complaint has been ruled out on numerous occasions. Satink v. Township of Holland, D.C.D.N.J.1939, 28 F.Supp.

2. "Punitive damages are not recoverable in automobile cases * * *" Downs v. Piersol, supra. "The other question * * is a new one in this State in cases of automobile accidents." Davis v. Gordon, supra. The case at bar involves a collision between a train and a motor vehicle wherein the former is not subject to the Motor Vehicle Laws.

3. Hintz v. Roberts, 98 N.J.L. 768, 121 A. 711; Hoffman v. Berwind-White Coal Mining Co., 265 Pa. 476, 109 A. 234; Weeks v. Carolina Power & Light Co., 156 S.C. 158, 153 S.E. 119; Hamerlynck v. Banfield, 36 Or. 436, 59 P. 712; Galloway v. General Motors Acceptance Corp., 4 Cir., 106 F.2d 466; Missouri Pac. R. Co. v. Heard, 185 Ark. 1055, 50 S.W.2d 971; Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S.W.2d 5; Lake Shore & M. S. Ry. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L. Ed. 97; Nashville C. & St. L. Ry. Co. v. Harrell, 21 Tenn.App. 353, 110 S.W.2d 1032. Many others could be cited but,

also, many other cases use the incompatible language "wilful and wanton". A few, such as New York and Maryland, use "malicious and wilful". See Footnotes 25 C.J.S. Damages § 123, p. 722 et seq., where dozens of authorities are cited with key language.

4. Gallegher v. Davis, 7 W.W.Harr. 380, 37 Del. 380, 183 A. 620, 622–623. Allegation that defendant was driving at a speed of 60 M.P.H. in a 45 M.P.H. zone. Demurrer sustained.

5. Paragraph 3(b) alleges that defendant had notice of many prior collisions at the same crossing, enumerating them in detail; Par. 3(c) sets out the prior existence of a blinker light which was discontinued and a custom thereafter of causing a flagman to precede the train into the crossing to warn approaching traffic; Par. 3(d) cites a warning as to the dangerous character of the crossing consisting of a resolution of the State House of Representatives which was transmitted to defendant.

67. Furthermore, one of the main purposes of the questioned paragraphs being to demonstrate a state of mind on the part of the defendant amounting to implied malice, Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C. would seem to be applicable. A reading of this Rule [6] indicates that detailed pleading of evidence as to the state of defendant's mind would be superfluous. Also to be noticed is that F.R. 8 and 9 do not, as does the Delaware Rule, Superior Court Rules, Civil Rule 8, Del.C.Ann., require specifications of negligence. From all this it may be logically argued that in a complaint claiming exemplary damages, the Federal Rules would be satisfied by the mere allegation of gross negligence or wilful or wanton conduct amounting to a conscious indifference to human life. On the other side of the picture is this consideration. How is defendant prejudiced by the appearance of evidentiary matter set forth in great detail in the Complaint? The answer must be, not at all.

Strictly speaking, I would suppose that the allegations of Par. 3(a)[7], to which defendant makes no objection, taken in connection with the first eleven and one-half lines of Par. 3(b)[8], coupled with a charge that defendant was guilty of wilful or wanton conduct exhibiting a conscious disregard for human life and safety, would satisfy the demands of F.R. 8(a) and 8(e). However, since motions to strike of this nature are not favored, Moore's Fed.Practice, Vol. 2, Sec. 12.21(2) and defendant can in no way be prejudiced[9], I decline to sustain the motion.

Interrogatories numbered 9, 12, 13, 30, 31, 33 and 34, must be answered by defendant. The basis for defendant's refusal to answer may have once been sound, McCord v. Atlantic Coast Line R. Co., 5 Cir., 185 F.2d 603, but since the amendment to the Rule in 1946, rule 33, it is clear that a corporate defendant will be required to divulge pertinent facts known to its employes. Moore's Fed.Practice, Vol. 4, Sec. 33.07 and Sec. 33.26.

Likewise, the subject matter of plaintiff's interrogatories numbered 19, 20, 35, 36, 37, 40, 43 and 44, seem to be well within the bounds of relevancy and materiality. They must be answered subject to defendant's right to object as to admissibility at trial.

Defendant's objections to the interrogatories and requests for admissions relating to newspaper clippings and editorials, letters and a resolution of the House of Representatives are not well taken. These matters not only tend to show that defendant had notice of the conditions at the grade crossing in controversy but throw light on the question of defendant's state of mind in permitting an allegedly dangerous situation to remain in the face of repeated protests and warnings. Whether or not the contents of these warnings will be admitted in evidence in toto is a matter for decision at the trial stage.[10]

The final objection is to a group of interrogatories seeking a detailed description of every collision which has ever occurred at this crossing. This objection is also denied upon the strength of Dimenco v. Pennsylvania R. Co., D. C.D.Del.1956, 19 F.R.D. 499, 501, but

---

6. "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

7. Describing in great detail the dangerous nature of the intersection.

8. The first portion of Par. 3(b) is a general charge that defendant had notice of the dangerous nature of the crossing. Defendant made no objection to this part of Par. 3(b).

9. Any evidentiary matter appearing in the paragraphs in question which is inadmissible, may be ruled out at trial.

10. Some of these communications contain inflammatory language, particularly the resolution of the House of Representatives referring to the crossing as a "death-trap".

the admissibility of such other collisions at trial must meet traditional tests.[11] For this reason, defendant will only be required to furnish details of past collisions between its trains and vehicles.

---

11. "A survey of authority indicates evidence of other accidents and near accidents is admissible to show dangerous character and notice provided the nature of the subject matter is in issue *and provided substantially similar conditions establish its probative value.*" (My emphasis.) Dimenco v. Pennsylvania R. Co.