WALLIS *v.* STUBBLEFIELD.

4-9007                                                 225 S. W. 2d 322

Opinion delivered November 21, 1949.

Rehearing denied January 16, 1950.

*Claude Duty,* for appellant.

*G. T. Sullins* and *Rex W. Perkins,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Hugh Stubblefield, owns and operates the Farmers Market at Fayetteville, Arkansas. Appellant, Marie Wallis, is engaged in the raising of broiler chickens on a large scale in Washington and Madison counties. Appellee brought this action in circuit court to recover $6,367.98 allegedly due for chicken feed sold to appellant. In her answer and

cross-complaint, appellant admitted purchasing the feed from appellee, but alleged that much of it was wet, molded, inferior in quality and unfit for the use for which it was sold, and that upon feeding it to her chickens, they became diseased and their growth thereby retarded to appellant's damage in the sum of $10,000.

By agreement of the parties, there was a trial before the court, sitting as a jury, which resulted in judgment against appellant and the garnishees, Claudine and Lester Lindley, in said sum of $6,367.98.

For reversal appellant argues that the judgment is against the preponderance of the evidence, but this is not the test. Where a jury is waived and the case is tried before the judge sitting as a jury, his finding on a question of fact is as conclusive on appeal as a jury verdict and will not be disturbed, if there is any substantial evidence to sustain the finding. *Johnson* v. *Spangler,* 176 Ark. 328, 2 S. W. 2d 1089; *Peterson* v. *Garland County,* 188 Ark. 1167, 65 S. W. 2d 18. In determining whether there is substantial evidence to support the judgment, we must, therefore, give the evidence adduced on behalf of appellee the strongest probative force that it will reasonably bear. *Wall* v. *Robling,* 207 Ark. 987, 183 S. W. 2d 605.

Appellant admitted purchasing the feed and there is an absence of proof that it was inferior in grade. Appellant testified that appellee agreed to supply feed for 25,000 chickens; that he furnished a good standard brand until the chickens were about eight weeks old; and that he then delivered chops, oats and egg pellets which he represented as being a good substitute for the higher priced standard brand. Although appellant stated that she had been growing chickens about eight or ten years and knew that the change in feed constituted bad feeding practice, she further stated that she relied on the representations of appellee in using the feed; that some of it was wet and moldy, but she fed most of this to her hogs; that the chickens became diseased and some of them died; and that the change of feed caused loss of

growth of about one pound per chicken on those marketed.

Lester Lindley, one of the garnishees, testified that he purchased 13,000 of the chickens from appellant; that the chickens weighed about two pounds each when they should have weighed three pounds; and that he sold them for 33c a pound which was 3c under the market price. He also stated that he had a conversation with appellee about the time of the sale in which the latter stated that he had "talked (appellant) into the notion" of buying the cheaper feed and thought he had saved her some money.

The evidence on behalf of appellee was to the effect that he only sold appellant the kind of feed she ordered; that it was delivered dry and in good condition; that any damage from dampness or moisture was caused by appellant's leaky buildings or from storing the feed in the same room with the chickens; that the chickens suffered no unusual sickness and most of them were normal in size and quality; and that some of them were barebacked and suffered from colds, a condition caused by over-crowding and poor ventilation.

Appellee denied that he made any representation to cause appellant to change feed and stated that this was done of her own accord. He further stated that appellant made no complaint as to the condition or quality of the feed until after institution of this suit. There was evidence that appellant refused to sell part of the chickens at a price 2c higher than the market price when it was suggested that payment should be made to appellee and appellant jointly. There was also evidence by experienced growers that the change in feeds did not constitute a bad feeding practice.

Appellant insists that the testimony of Lester Lindley, garnishee, in reference to the conversation with appellee is wholly undisputed and fully established the fact that appellee caused a change of feeding which resulted in damage to appellant. While appellee was not questioned with reference to the alleged conversation with Lindley, he did positively deny that he made any repre-

sentation to appellant or had anything to do with the selection of the feed sold. Lester and Claudine Lindley, as garnishees, filed an answer stating an indebtedness to appellant in the sum of $2,406.50. The answer was controverted and there is no appeal from the court's finding that the Lindleys were indebted to appellant in a sum exceeding the amount of the judgment.

It is thus noted that testimony bearing on the cross-complaint filed by appellant is conflicting. When considered in the light most favorable to appellee, the evidence is substantial and sufficient to support the judgment.

Affirmed.