ADKINS v. WILLIS.

4-9180                                    230 S. W. 2d 32

Opinion delivered May 15, 1950.

J. J. *Montgomery, Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

J. H. *Brock* and *Leland R. Branting,* for appellee.

GRIFFIN SMITH, Chief Justice. A jury found that the defendants, now appellees, were entitled to possession of land touching nearly an acre upon which a store building stood. After suit was filed O. R. Willis sold the store property to M. K. Hodges and his wife, who were brought into the litigation. A. B. Adkins and Lillian N. Askins were owners of property north and south of Willis and contiguous to him.[1] Adkins testified that the line to which he claimed was determined by a fence that had been in place for more than half a century. In 1927 appellants acquired the Newton tract, from which the store property was carved. Lands owned by appellants surround the area contended for by appellees, but the controversy relates to north and south boundaries only.

In its verdict the jury determined that appellees were entitled to the disputed strips "on west and south lines between the original fence boundary line and the present fence as constructed by the defendants."

The "present fence" was built by Willis following a survey by J. M. Tate, County Surveyor. It is conceded

---

[1] Similarity of names would indicate a typographical error, but not so. Adkins owned a life estate in property contiguous to the land contended for here, and Lillian N. *Askins* owns the fee in remainder.

that deeds under which appellees claim described the property if the point of beginning in making the survey was correctly determined by Tate. The start would be "At the Hagarville line in the middle of the public road, thence east with the road 187 feet, south 194 feet, west 187 feet, and north 194 feet," etc. Appellants could not show a record title that included any of this lot, but they insist that the old fence had long been regarded as the boundary. Adkins testified that in cultivating his own land he had gone to the fence, or had used the disputed area for pasturing his stock. One witness testified that "Long ago [the present east-west highway through Hagarville] was only a wagon road, five or six feet wide." This witness thought the description "Hagarville line in the middle of the public road" meant the center of the ancient thoroughfare.

Several diagrams were considered, with testimony by witnesses who used the drawings in illustrating to judge and jury. An example of the jury's better understanding of what witnesses were saying—better as contrasted with conclusions we must draw from the record—is reflected in the cross-examination of Mr. Adkins. In explaining a plat and discussing a stone marker he was accused of having moved, the following questions were asked and answers given: Question: "Is *this* the line?" A. "It is 352 feet from *here.*" Q. "*That* is where the marker stone is?" A. "Yes." Q. "*Here* is the 33/100 acres?" A. "Commence *here* and come up to *here.*" Q. "How wide is *this?*" A. "Road is what the deed says." Q. "How do you know that is it?" A. "There just [isn't] any land for it to be except *that, that* went back to the State and I bought it." Q. "*This* represents a line *here* between you and Mr. Willis, doesn't it?" A. "Yes." Q. "And *this* is a block of land excepted out of this deed?" A. "Yes, sir." Q. "How do you jump across *over here* and get *this* strip of land?" A. "That is just a mistake about lapover and taking my land. *This* is the way it has always been."

Other witnesses testified with equal certainty in so far as distances, directions, area, points of beginning and

ending, and such matters were of importance—facts the witnesses were seemingly familiar with, and as to which with chart aids they were able to effectively clarify transactions and make certain *"this," "that,"* and *"here,"*—references more or less meaningless to us. The problem presented by unfinished reference testimony was emphasized in *Smith* v. *Magnet Cove Barium Corp.,* 212 Ark. 491, 206 S. W. 2d 442.

After the Adkins-Willis controversy arose Willis engaged J. M. Tate to make the survey. Tate testified that he went with Adkins to the corner of Section Fifteen nearest the land in question—a point agreed to by Adkins. Adkins [said Tate] had in advance of the survey consented to abide the result. Tate, from Section Fifteen, established to his own satisfaction where the Willis lot should start, but Adkins then protested. It was Adkins' belief that the surveyor ought to have gone to a rock farther east. This, inferentially, was the stone Adkins was alleged to have moved. Adkins' explanation was that a road grader "undercut" the so-called stone marker, shifting it to such an extent that replacement was necessary. In making this change Adkins undertook to put the rock as near the original position as practicable.

Appellees insist that Adkins is concluded by his consent to respect the result of the survey; but, if they are wrong in this, then testimony by Adkins that he did not intend to hold "more land than was [rightfully] his," or to claim in excess of his deed, contradicted the adverse possession tenure, thus presenting a question for the jury regarding the nature of Adkins' occupancy. It is true that on redirect examination Adkins modified his language by saying he thought the fence was the boundary and that his intent was to claim to it. But even so, the jury had a right to weigh the characteristics of the claim—to determine whether open, notorious, hostile, or friendly. *Martin* v. *Winston,* 209 Ark. 464, 190 S. W. 2d 962.

Appellants correctly say that if title by adverse possession had ripened before Willis and Adkins agreed

(as appellees insist) that the controversy should be referable to Tate's survey, the oral promise by Adkins to abide the result would not be binding. *DeWeese* v. *Logue,* 208 Ark. 79, 185 S. W. 2d 85. But in the case at bar there was something more than the so-called agreement. The nature of Adkins' possession, his intent or lack of intent to take more land than his deed called for, and his oral testimony with chart indications the jury could consider—these were factual matters resolved against the plaintiffs, and we cannot say that substantial testimony in support of the result was lacking. The instructions (not complained of) have not been abstracted.

Affirmed.