PERSON *v.* MILLER LEVEE DISTRICT No. 2.

4-9319                                                237 S. W. 2d 38

Opinion delivered December 4, 1950.

Rehearing denied March 26, 1951.

*Shaver, Stewart & Jones* and *L. K. Person,* for appellant.

*Smith & Sanderson;* for appellee.

Ed. F. McFaddin, Justice. The levee of Miller Levee District No. 2 (hereinafter called ''District'') is located on lands of L. K. Person (hereinafter called ''landowner'') south and west of Red River in Miller County. In November, 1948, due to a caving river bank, the District decided to construct a setback levee, or loop, about two miles in length, with each end joining the old levee —the result being to make the new loop several hundred feet removed from the river. Insofar as this setback levee affected the landowner, Person, it meant: (1) the right-of-way for the setback levee took 20.75 acres of his land; (2) 18 acres of his land was between the old levee and the new, or setback, levee; (3) a roadway, or ramp, was constructed across the new levee to afford the landowner access to the said 18 acre tract; and (4) drainage problems were suggested not only as to the 18 acre tract, but also as to the lands behind the setback levee.

The District,[1] under its power of eminent domain,[2]

---

[1] Miller County Levee District No. 2 was created by Act 69 of 1911, and that Act has been amended by Act 71 of 1913, Act 25 of 1917, and Act 123 of 1921.

[2] In *Miller County Levee District No. 2* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469, we stated that §§ 4934, *et seq.,* of Pope's Digest were

filed condemnation proceedings against the landowner. The appraisers (acting pursuant to § 35-1103, Ark. Stats.) awarded the landowner $2,075 for the 20.75 acres actually taken for the right-of-way of the setback levee. This award was satisfactory to the landowner; and he accepted such amount, and no question is involved in this case as to the land actually taken for the right-of-way. But the landowner duly objected to the report of the appraisers as to the other elements of damage, i. e., (1) inconvenience of crossing the setback levee to reach the 18 acre tract; and (2) damage to drainage. As to these two elements of damage, the case was tried to a jury in the Circuit Court.

The landowner had rented the lands to his son, L. K. Person III (hereinafter called "tenant"), who intervened to claim crop damage; and the tenant's claim was also tried to the same jury. The condemnation action was filed in November, 1948, and the setback levee constructed shortly thereafter, so that the work had been entirely completed prior to the trial in December, 1949; and the witnesses testified as to the actual effect of the work. The trial resulted in a verdict and judgment for the District, awarding no damages to either the landowner or the tenant on any of the three claims (i. e., crossing, drainage, or crops) involved in the litigation. This appeal challenges that judgment.

The only question presented is whether there was substantial evidence to sustain the jury's verdict disallowing each of the said claims. On appeal to this Court, in a case such as this, the rule is well established that we affirm the judgment if the record shows substantial evidence to sustain the verdict. See *Wallis* v. *Stubblefield*, 216 Ark. 119, 225 S. W. 2d 332.[3]

I. *Inconvenience of Crossing the Levee to the 18 Acre Tract.* As previously stated, the District con-

the applicable Statutes in eminent domain proceedings by appellant District. These Sections, as amended by Act 177 of 1945, are now found in § 35-1101, *et seq.*, Ark. Stats. These last mentioned Statutes are governing.

[3] Other cases on this point are collected in West's Ark. Digest, "Appeal and Error," § 1001.

structed a ramp on both sides of the setback levee, thereby providing a roadway for access to the 18 acre tract outside the setback levee. The landowner and his witnesses testified that such ramp, or roadway, was entirely inadequate. On the other hand, the witnesses for the District testified to the contrary. The witness, Hall, said: ''You wouldn't have any trouble getting to the 18 acres to work it.''[4] We conclude that there was substantial competent evidence to sustain the jury's verdict refusing to award damages for inconvenience of crossing.

II. *Damage to Drainage.* The landowner claimed (a) that the construction of the new levee left the 18 acre tract in a pocket between the old levee and the setback levee; and (b) that, because of the slope of the ground, the setback levee interfered with drainage of the lands behind it. On the other hand, the witness, R. V. Hall, testified:

''Q.  Has the construction of this levee in any manner affected the drainage of this land here?

''A.  I cannot say it has.

''Q.  Has it affected it anywhere?

''A.  In my opinion, it is easier to drain now more than before  . . .''

On these two matters, as on the one previously men-

---

[4] As a further example of the testimony for the District, we quote from that of R. V. Hall, the engineer of the District:
"Q.  Where is the ramp there on the levee?
"A.  It is in the extreme upper end where the new levee takes off from the old levee.
"Q.  Right in here?
"A.  Yes, sir.  I marked it there.
"Q.  What elevation does that ramp have; is it a steep ramp?
"A.  No, sir.  It is a very reasonable ramp.  You can cross it without changing gears in an empty vehicle.  . . ."
. . . . . . . . . .
"Q.  In your opinion, is it hard to go from one side of the levee to the other?
"A.  I don't see any real obstacle to it.  There are lots of places on any farm where you have to be careful with equipment and watch where you are going.
"Q.  How wide is the narrowest point after you cross the ramp?
"A.  It is impossible to tell just where the levee stops and the road begins but any vehicle even sixteen or twenty feet wide could be run up on the levee and cross without any danger."

tioned, there is substantial competent evidence to support the jury's verdict denying a recovery.[5]

III. *Crop Damages Claimed by Tenant.* The tenant, L. K. Person III, by intervention and evidence, sought to establish that in the summer of 1948 he rented 38 acres of land from his father, plowed and disked it, and planted a winter cover crop on some parts in preparation for the 1949 planting; that the condemnation proceedings deprived him of the use of the 38 acres; and that he was entitled to crop damages. (See § 35-1103, Ark. Stats.; and *Ross* v. *Clark County,* 185 Ark. 1, 45 S. W. 2d 31). The jury returned a verdict allowing the tenant no damages and he has appealed.

The record brought to this Court makes it impossible for us to determine the location of the parcels of land comprising the said 38 acres, because the witness,

---

[5] As to the drainage of the 18-acre tract, the witness, Hall, testified:

"Q. What is the natural drainage to the 18 acres, Mr. Hall?
"A. Generally to the south.
"Q. Are your bar (borrow) pits sufficient in there to drain that 18 acres?
"A. In my opinion they are."

As to the drainage of the lands behind the new levee, the same witness testified:

"Q. Now, getting to these lands here, what is the general direction of the natural drainage of this acreage in here?
"A. As a general thing, it is to the south, . . .
"Q. Is there a ditch leading from the east side of this levee to the west side over here to this road?
"A. From the west side of the new levee to the road?
"Q. To the east side of the road?
"A. Yes, two ditches.
"Q. One on the north side and then one south of there?
"A. Yes, sir.
"Q. Now these are located here and drain into the canal which drains into the main line ditch which is on the west side of the public road; now, in the construction of the new setback, did that in any manner affect the drainage of this ditch here?
"A. Not that part extending from the new levee to the highway.
"Q. It only affected that part of it which the levee actually was built on?
"A. That's right.
"Q. And didn't affect that part extending from the west side of the levee to the road?
"A. That is right.
"Q. Or either ditch?
"A. That is right."

R. V. Hall, testified [6] from a map which, if introduced in evidence, is not in the record before us. (See *Smith* v. *Magnet Cove Barium Corporation,* 212 Ark. 491, 206 S. W. 2d 442, and *Adkins* v. *Willis,* 217 Ark. 287, 230 S. W. 2d 32.) In the absence of the map, we cannot say that the testimony—intelligible to the jury which saw the map —was not sufficient to support the verdict.

The burden is on the appellant to establish in this Court that error was committed in the trial court. (See *Clow* v. *Watson,* 124 Ark. 388, 187 S. W. 175.) Until such error has been established, the judgment of the lower court will not be reversed. In *Newald* v. *Valley Farming Co.,* 133 Ark. 456, 202 S. W. 832, an instrument referred to as "exhibit 8" was not in the transcript, and, in presuming the decree to be correct because of such material omission, this Court said:

"Exhibit 8 is not in the record and for aught that appears to the contrary the lands purchased by Terry and Taylor may be mentioned in exhibit 8. Every presumption is in favor of the correctness of the decision of the court below, and in order to warrant a reversal, error must affirmatively appear from the record. This has been established by an unbroken line of decisions in this court. Hence it was incumbent upon Terry and Taylor to have seen that exhibit 8 was in the transcript, and not having done so, the presumption is in favor of the correctness of the decree. *Norman* v. *Poole,* 70 Ark. 127, 66 S. W. 433; *Hardie* v. *Bissell,* 80 Ark. 74, 94 S. W. 611, and *Tatum* v. *Crownover,* 94 Ark. 58, 125 S. W. 610."

With the record before us in the condition in which it is, we cannot say that the evidence fails to support the

[6] In the testimony of the witness, Hall, we find such matters as these: "Mr. Hall, now let's look at this map over here before the jury . . .". Then, while the witness was explaining the map, he said, "The white line is the center of the new levee which has been built. . . . The old levee is the line colored red . . .". Then, after four pages of questions and answers we find this: "Is there anything else about your survey or map you would like to explain to the jury?"; and the witness then spent several pages talking about "this area of 2.9 acres," and "this marked 'C'-3.6 acres," and "this area 'A'-11.32 acres." All of the foregoing was probably most clear to the jury with the map there before it, and with the areas pointed out by the witness. But the testimony is practically meaningless to this Court on appeal because the map does not appear to have been introduced. At all events, it is not in the record before us.

jury's verdict which found that the tenant was not entitled to any recovery for crop damage.

Affirmed.

