SOUTHLAND TRACTORS, INC. *v.* CLAYTON.

5-161                                261 S. W. 2d 539

Opinion delivered October 26, 1953.

*Wils Davis, William A. Percy* and *DeWitt Poe,* for appellant.

*Edwin E. Hopson, Jr.,* for appellee.

ROBINSON, J. Appellant, Southland Tractors, Inc., hereinafter referred to as Southland, is a distributor of Ferguson tractors and implements and also handles implements of other makes. Appellee Bert Clayton was in the tractor and farm implement business at McGehee, Arkansas, and obtained tractors and implements from Southland. Southland filed this suit against Clayton for the balance of $1,837.52 on a $4,171.99 note and $51.95 on an open account. Clayton filed a cross-complaint for $3,-615.42 on an alleged oral contract providing for the return of certain tractors, implements, and parts to Southland. A jury was waived, the court rendered a judgment for Clayton, and Southland appeals.

In obtaining the tractors and implements from Southland, Clayton would pay 10% at the time of purchase. Southland would transfer the title-retaining notes for the balance to a finance company and guarantee the payment. Clayton would pay 10% each 90 days thereafter until he made a resale of the particular item; then the entire balance owed on that item would be paid in full. Clayton got into such financial condition that he could not make the 90-day deferred payments; Southland loaned him $4,-171.99 to bring up to date his past-due payments with the finance company; but in a short time Clayton was again behind in his payments.

It was then that Howard Sullins, President and General Manager of Southland, George Walters, Zone Manager, and T. D. Warner, Secretary and Treasurer, all acting for Southland, made a trip to McGehee to see what could be worked out. They first conferred with Clayton at his place of business, but due to the lack of privacy they retired to a hotel room where they held a further discussion. The outcome of this lawsuit depends on the terms of an agreement reached between the parties at Clayton's place of business and in the hotel room.

Southland contends that in the sale of the property to Clayton title had been retained and the only agreement reached with Clayton on the trip to McGehee was that the property would be returned to Southland and the balance

owed thereon cancelled as in a replevin suit. On the other hand, Clayton claims that the property was returned to Southland under the terms of the oral agreement which provided that he was to be allowed credit in a final settlement for the amount he had paid on the property; and that after taking into consideration all debits and credits, Southland owed him $3,615.42. There does not appear to be any controversy as to this being the sum owed to Clayton by Southland after taking credit for the balance owed on the note and open account and after having paid the finance company in full, if Clayton is correct in his claim that he was to get credit for the amount he had paid on the property which he returned to Southland.

The trial court, sitting as a jury, accepted Clayton's version of the transaction and rendered judgment against Southland on the cross-complaint. If there is any substantial evidence to support the finding of the court sitting as a jury, the judgment must be affirmed. *Wallis* v. *Stubblefield*, 216 Ark. 119, 225 S. W. 2d 322.

Clayton states positively that Mr. Sullins said: "Now here is what we will do . . . I want the stuff." Clayton testified: "I said, 'I don't want to lose any money in the deal, no more than I have already.' He said, 'Here is what we will do—I want you to have every dime you have got in the tractors and implements and parts. I don't want you to lose a penny—I want you to get what you have got coming, then if we have got anything coming I want, naturally, to have my part of it. I want you to pay up.' I said, 'That's fair enough, if you give me what I have got in it, all of it, then I am willing to pay up—I don't want any of your money—I am willing to pay if you say I owe anything—just give me what I have got in the business and I will give you the franchise and step out of the picture.' "

Clayton further testified: "Q. Let me ask you if you are positive that they told you that you would get back what you had in the tractors and implements and parts. A. That's right. Q. So far as the parts——(interrupted). A. He said, 'If you have got anything coming we want you

to have every dime of it and if we have got anything coming naturally we want ours.' I said, 'Well, that is fair enough.' He said, 'We will move the stuff out,' and I said, 'Suits me.' ''

Royce Ingram, an employee of Clayton, testified that while Sullins and the others were at Clayton's place of business before going to the hotel room he heard a representative of Southland say to Clayton that they would have to take his franchise, but if he had anything coming back to him he would get it.

In addition to the testimony of Clayton and Ingram there are circumstances which tend to corroborate their testimony. There were seven tractors returned by Clayton to Southland, which Clayton had purchased and received about a year before, and on each of which he owed a balance of only about $1,000.00. He testified that before he would have agreed to return the tractors to Southland and receive credit merely for the balance owed, he would have sold the tractors to his neighbors and friends in the farming business. He says that any number of them would have been more than glad to have purchased the tractors for the balance owed to Southland. Clayton's contention in this respect is highly persuasive. It does seem likely that if he was to receive from Southland credit for only the balance owed on these new and unused tractors, instead of the amount he had paid, he would rather have let his friends and neighbors in the community buy the tractors for the balance owed thereon.

Southland claims that a short time before the final agreement Clayton had returned implements receiving credit only for the balance due thereon, and that such fact goes to show that he was willing to return the merchandise on that basis. However, Clayton states that the failure to claim credit for the amount paid was due to an oversight by the person who made the audit. The $3,-615.42, the amount of the judgment, is the sum left in Clayton's favor after crediting him for the original purchase price of the returned property and then charging him with the balance due on the note and open account

and the sum paid by Southland to the finance company on Clayton's account.

After reviewing the entire record we are unable to say there is no substantial evidence to sustain the judgment.

Next, appellant says the trial court erred in failing to state in writing conclusions of fact and law separately. The trial was held on August 14, 1952; the court took the case under advisement and no request was made at that time for a statement in writing as to conclusions of law and fact. On October 24, 1952, the court notified the respective counsel that the judgment would be for the defendant on the cross-complaint in the amount sued for. It was not until November 6, 1952, that appellant filed a motion asking that the conclusions of law and fact be reduced to writing. The judgment was entered of record January 17, 1953; the request for special findings of fact was not made upon the trial or during it. In *Globe & Rutgers Fire Ins. Co.* v. *Pruitt,* 188 Ark. 92, 64 S. W. 91, Mr. Justice FRANK SMITH speaking for the court said: "The statute contemplates that these findings shall be made upon the trial, or during it, and a request made thirteen days after the trial was not in apt time."

Affirmed.