KOELSCH *v.* ARKANSAS STATE HIGHWAY COMMISSION.

5-382                                        267 S. W. 2d 4

Opinion delivered April 19, 1954.

530

*C. V. Jones* and *Opie Rogers,* for appellant.

*W. R. Thrasher* and *William L. Terry,* for appellee.

MINOR W. MILLWEE, Justice. On June 23, 1952, the county court of Van Buren County, on petition of appellee, Arkansas State Highway Commission, entered its order prescribing the route and dimensions of a new road which would run through lands owned by Phil Koelsch, appellant, and condemning 2.2 acres of said land for use as right-of-way for the road. When appellant refused to allow entry upon his condemned property, appellee filed an injunction suit to restrain him from interfering with the contractor's work, and on August 22, 1952, the chancery court made such an order, after requiring that appellee deposit $1,000 to guarantee payment of any damages suffered by appellant due to the entry onto the property. After a hearing on June 23, 1953, the chancellor found that appellant was entitled to no damages for the taking of his lands, and ordered the $1,000 deposit returned to appellee after costs were deducted. This conclusion was apparently based on the court's determination that the benefits resulting to appellant's remaining lands equaled or exceeded the value of the lands taken and any damages to the remaining lands.

Appellant first argues, for reversal, that the benefits which will offset the loss of his 2.2 acres must be local, special, and peculiar to his land and not such benefits as accrue to the public generally. The proposition of law argued is true, but we have held that a benefit does not cease to be special even though other property along the new road receives benefits from the road. In *Ball* v. *Independence County,* 214 Ark. 694, 217 S. W. 2d 913, this court approved an instruction which stated that special benefits include both neighborhood and peculiar benefits, and that a benefit does not cease to be special because it is participated in by every lot or farm fronting on the highway or improvement. See also, *Herndon* v. *Pulaski County,* 196 Ark. 284, 117 S. W. 2d 1051.

At the conclusion of the evidence offered by the parties, the chancellor on his own motion called three witnesses appointed by him on the day of trial to view the lands and testify as to comparable values before and after the taking of the right-of-way. None of these witnesses qualified as experts on land values. Appellant now contends that this procedure was wholly unauthorized and that error was committed in admitting the testimony of these witnesses. This contention would present a serious question if appellant had made any objection to such procedure or the testimony of said witnesses at the trial. We are committed to the rule that all objections to evidence and witnesses in chancery cases must be made in a timely manner in the trial court and, if not so made, such objections will be considered as waived when the case reaches us on appeal. *Umberger* v. *Westmoreland*, 218 Ark. 632, 238 S. W. 2d 495. Hence appellant has waived the objections he now urges for the first time.

The remaining issue is whether the findings of the chancellor are supported by the preponderance of the evidence. The lands involved are a part of appellant's 75-acre farm which he purchased in 1946 for $3,500.00. The greater portion of said lands are rough, hilly, timbered lands of little value. There are about 20 acres of fertile creek bottom lands near appellant's home and the highway with about 5 or 6 acres cleared and in cultivation. The 2.2 acres were taken out of the tillable bottom lands upon which appellant raised feed for his livestock. The old gravel highway ran conveniently near appellant's home. The road was rerouted to make a long sweeping curve dividing appellant's tillable lands and leaving approximately 2 acres across the new road from the rest of his property. The curve also resulted in the road in front of appellant's home being relocated north of the old road so that there is a small strip belonging to a third party between the old and new roads. It was also necessary to construct a new bridge on the creek nearby about 20 feet downstream from the old bridge.

Appellant and four other witnesses in his behalf testified that his damages exceeded any benefits from the construction of the new road by amounts varying from $1,000 to $1,900.00. At the court's insistence, these witnesses itemized the various elements of damage about which they testified. They estimated the value of the 2.2 acres taken at $175 to $225 per acre. L. M. Conner, a real estate dealer, roughly estimated that appellant's damages amounted to $2,000 offset by $1,000 in benefits by reason of the construction of the new road. When asked to itemize the damages, he stated that the lands taken were worth $500; that the remaining lands were damaged to the extent of $500 from washing and overflow occasioned by relocation of the bridge and $400 because of inaccessibility of his cultivated lands northwest of the new highway which were severed from the rest of his lands; and $50 to $75.00 for a fence torn down by overflow. He also stated that appellant's farm had a market value of $4,000 before, and $2,800 after, construction of the new road. Three farmers living in the vicinity corroborated the testimony of Conner as to the damages sustained and were of the opinion that little, if any, benefits accrued by construction of the new road.

Appellee's first witness was its right-of-way engineer who examined the lands for about 45 minutes on the morning of the trial and described the general physical situation as altered by the new construction. He gave no testimony relative to monetary damages that appellant might have sustained by the taking of his land. The next witness for appellee was the county judge who, after stating that he was "not too familiar" with the lands in question or land values generally, replied when asked about appellant's damage: "I guess he is damaged, but still on the other hand of course I am pretty strong for good roads." It was at this point that appellee rested and the chancellor called the three witnesses appointed by him. The first witness was a former farmer, county treasurer and deputy sheriff. The second was a postmaster and former county assessor and

sheriff. The third witness formerly farmed and stated that he had "considerable road experience" and was reasonably well acquainted with real estate values. In response to rather leading questions by the court these witnesses stated they had observed the various physical aspects of the property and that, in their opinions, the farm was worth as much after the land taking as it had been before. They were not asked to specify or itemize any damages or benefits and did not assign any reasons for the opinions given.

We have held that where witnesses give their opinions as to damages to the lands taken in cases of this kind, such testimony must be considered in connection with related facts upon which the opinions are based. *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738. We agree with the chancellor's observation that neither the trial court nor this court can determine these cases to a mathematical certainty. However, after careful consideration of all the testimony, we have concluded that a preponderance thereof supports the conclusion that the value of the lands taken and the damages to the remaining lands exceeded the benefits thereto by the sum of $500. The decree is accordingly reversed and the cause remanded with directions to enter judgment in favor of appellant for that sum.