FONTAINE *v.* WOFFORD.

5-433                                    269 S. W. 2d 309

Opinion delivered June 21, 1954.

*Bedwell & Bedwell,* for appellant.

*Wilson & Starbird, Robinson & Edwards* and *Hardin, Barton, Hardin & Garner,* for appellee.

PAUL WARD, J. This suit was brought by appellants in the Circuit Court to eject appellees from the E ½ of the SW ¼ of Section 9, Township 8 N, Range 30 W. The vital issue developed was: Did appellants or appellees hold legal title to the lands involved? This issue was properly developed. See *Brasher* v. *Taylor,* 109 Ark. 281, 159 S. W. 1120. The trial resulted in a judgment in favor of appellees and appellants have appealed.

*The Factual Background,* about which there is no dispute is as presently set forth. The land in dispute lies adjacent to the Arkansas River and, concededly at times pertinent hereto, was located in the bed of the river. In a similar suit filed by appellants before this suit was filed they claimed title to the land from two different sources. *First.* Appellants claimed title as the ancestors of one C. B. Fontaine who had undisputed title of the lands in 1905. In 1910 the lands were completely submerged in the Arkansas River and they ceased to be assessed for taxes. The lands continued in this status until 1924 when Fontaine died. Apparently appellants have now abandoned this source of title. *Second.* Prior to 1933 Lee Collins owned the W ½ of the SW ¼ of said Section 9,

and, claiming the lands in dispute as accretion, he assessed the entire Southwest quarter in his name. After Collins' death his widow, as legatee under his will, deeded said southwest quarter to one John Q. Allen. Said John Q. Allen took possession of the lands in dispute and assessed the same in his name. The lands were so assessed in 1946 but the taxes for that year, payable in 1947, were not paid, probably because Allen died in that year. In 1953 appellants procured a deed from Mamie Allen, widow of said John Q. Allen, and later [after the present suit was filed] they procured deeds from the collateral heirs of John Q. Allen.

*Appellees' title* to the lands in question is based on the validity of the 1946 forfeiture mentioned above. As a result of said forfeiture, the sheriff, on November 10, 1947, sold the lands to one Addis Byran. In due course Byran received a tax deed, had it recorded, assessed the lands in his name, and paid taxes thereon until January 29, 1953, when his widow and heirs conveyed the land in question to appellee Jay Neal. Neal conveyed a one-half interest in the land to Boyce Wofford.

During the course of the trial in which voluminous testimony was introduced it became apparent that the validity of the 1946 forfeiture was a vital question. Appellants contend that the forfeiture was void because during 1945 and 1946 all of the lands in dispute were wholly in the bed of the Arkansas River, that consequently the land belonged to the State of Arkansas, and that therefore the assessor of Crawford County had no right to place them on the tax books. Appellants' further contention was that, since the 1946 forfeiture was void, they had good title by virtue of deeds from the heirs of John Q. Allen. Appellees took the position that said lands were not wholly submerged, as hereafter defined, in the Arkansas River during 1945 and 1946, that the 1946 forfeiture was valid, and that therefore they received good title by virtue of the deed from Addis Byran.

After much testimony was introduced by both sides as to whether the lands were so submerged, the trial

court, pursuant to an agreement by all parties, submitted to the jury this one question of fact:

"Did the entire East Half of the Southwest Quarter of Section Nine, Township 8 North, Range 30 West disappear into the normal bed of the river in the year 1945 and remain completely in the bed of the river through the entire year 1946?"

Under specific directions by the court for the jury to answer the above question "Yes" or "No" the jury found the answer to be "No".

In order to assist the jury to intelligently consider the question submitted to it the court gave several other instructions to which no objections were made by either side. In one instruction the court defined the phrase "high water mark" in this language:

"The high water mark of a navigable stream is to be found by ascertaining where the presence and actions of water are so usual and long continued in ordinary years as to mark upon the soil of the bed a character distinct from that of the banks in respect to vegetation and the nature of the soil."

In another instruction the court said:

"You are further instructed that even though land formations lying in the bed of a navigable river are not completely submerged in the water, yet if the area is so completely covered with sand and silt or other such matter deposited by the flow of the water to the point that it loses its character as soil capable of supporting vegetation, and its fertility is gone for agricultural purposes, then it is nevertheless to be regarded as within the bed of the stream and the property of the State of Arkansas."

The sole contention of appellants is that the verdict of the jury is not supported by substantial evidence. Appellants, to sustain their contention, quote many portions of the evidence which tend to show that all the lands were wholly submerged for the years 1945 and 1946. It would serve no useful purpose for us to point out the testimony relied on by appellants, because we are convinced

that the record does contain substantial evidence to support the verdict of the jury. This court has consistently held, as we held in the cases of *Persons et al.* v. *Miller Levy District No. 2*, 218 Ark. 86, 237 S. W. 2d 38, and *Wallis* v. *Stubblefield*, 216 Ark. 119, 225 S. W. 2d 322, that the verdict of a jury will not be disturbed if there is substantial evidence to support it.

A brief reference to some of the testimony introduced by appellees is sufficient to show that there was substantial evidence to support the jury's verdict.

James H. Rutledge, an engineer, identified certain maps, photographs and aerial mosaics purporting to show that in the year 1945 approximately ninety per cent of the land in question was above high water mark and covered with vegetation; that trees, some 12 inches in diameter, were growing along the edges of the land. The witness states that flood stage on the Arkansas River at or near this point was approximately 22 feet on the river gauge and that the land in question was substantially above that mark. He further stated that although the river stage on October 25, 1945, was approximately 24 feet an aerial map made on October 10, 1945, showed a large portion of the land was above that stage. Another witness testified that in 1945 and 1946 he hunted all over the land in question and that there were trees 3 or 4 inches in diameter in 1945. Other witnesses testified to substantially the same thing. Another witness testified that he had lived within one-quarter of a mile from this land since 1920, that he was thoroughly familiar with the land in 1945, 1946 and 1947 and that he pastured his cattle and hogs on the land during those years.

Appellees discuss other issues which they contend would call for an affirmance of this case but in view of our conclusions announced above it becomes unnecessary to discuss them.

Affirmed.