ORR *v.* WALKER.

5-1493                                          310 S. W. 2d 808

Opinion delivered March 10, 1958.

*Jack Holt* and *John F. Park,* for appellant.

*Rose, Meek, House, Barron & Nash* and *Phillip Carroll,* for appellee.

PAUL WARD, Associate Justice. Appellee, Crane Walker, sued appellant, Verble Orr, a Little Rock City Policeman, for actual and punitive damages because of an alleged assault on him (appellee) in connection with a double parking incident. From a jury verdict awarding appellee actual damages in the amount of $100 and punitive damages in the amount of $400 Orr has appealed.

For a reversal, appellant urges four separate grounds which we now discuss.

*One.* This ground questions the sufficiency of the evidence to support the verdict and judgment. Under the well established rule that this court will not disturb the verdict of the jury if there is substantial evidence to support it, we hold that the judgment must be sustained on this point. Also, in reviewing the testimony as we will presently do, we construe it in the light most favorable to appellee, since it is the province of the jury and not this court to resolve all conflicts in the testimony. See: *United Van Lines* v. *Haley,* 214 Ark. 938, 218 S. W. 2d 715; *Wallis* v. *Stubblefield,* 216 Ark. 119, 225 S. W. 2d 322, and, *Pate* v. *Fears,* 223 Ark. 365, 265 S. W. 2d 954.

Appellee, a 19 year old student in the University of Arkansas, testified in substance: I double parked on Main Street in Little Rock, between 5th and 6th street to pick up my wife who works at Pfeifers and who was

standing on the sidewalk with two other women; I thought she could get in the car in two or three seconds; at this time appellant came up and told me to move on; by that time my wife was getting in the car; appellant told me to pull to the curb and he was going to give me a ticket; I pulled to the curb at the nearest place, and walked back to where appellant was; appellant told me to back up the car to where he was, and I told him the car wasn't moving, he could give me a ticket as I was in a hurry; appellant said you are under arrest; I said all right and that is when he slapped me twice and hit me in the face with his fist doubled up; my eyes were swollen and within 3 hours my eye was closed; a crowd of about 200 was present. Mrs. Elizabeth Huckaby, who was present and who said she had never seen appellee or his wife before, corroborated appellee's testimony. She said, in substance: I heard an officer blow his whistle and appellee got out of his car and came back and they said something to each other, and the officer hit appellee, then hit him again, and hit him the third time with his fist; I stepped off the sidewalk and said don't hit this boy again, you are in the wrong, and he said "get back up there on the side walk or I will arrest you", and I obeyed; appellee's wife ran down there, crying, and said to the officer "don't hit him again, don't hit my husband", the officer kept telling appellee to move the car or park the car or did he want it drug in, and appellee said "I don't want it moved again, just give me a ticket and let me go"; appellee kept saying "tell me what you want", and the officer kept saying "you will find out." Rowe Huggins, a brother-in-law of the appellee, who was in the car also, corroborated the testimony of the other witnesses.

Appellant was the only witness present at the time of the alleged assault who contradicted the testimony set out above. He admitted hitting or slapping appellee once, but claimed he did so to prevent appellee from hitting him. He also stated that when he took appellee by the arm to go across the street to a call-box appellee jerked loose from him.

The above testimony was sufficient to sustain the verdict of the jury both as to actual and punitive damages, under proper instructions.

"Whether punitive damages should be awarded in a given case is a matter ordinarily resting within the discretion of the jury, under proper instructions, if the defendant is shown to have been guilty of excesses accompanied by conduct indicating a wanton disregard of the rights of the adverse party." See: *McGlone* v. *Stokes,* 193 Ark. 1008 (at pages 1014-1015), 104 S. W. 2d 191. As we shall later see, the instructions here were proper and there was, we think, substantial evidence to make a jury question. We realize the difficult situations which often confront a law enforcement officer, and, even though we might not in some cases agree with the result reached by a jury, we cannot, as appellate judges, assume to take its place in our judicial system.

*Two.* Next it is urged by appellant that the court erred in excluding certain testimony of three witnesses, to-wit: Officer Moore, Assistant Chief Eugene G. Smith, and R. E. Glasscock. We find no reversible error, in either instance, as presently explained.

Appellant states that the court refused to allow Moore to testify that Rowe Huggins, brother-in-law of appellee, was trying to fight appellant when he went over to them, but a careful search of the record fails to reveal a proper objection to the court's ruling as is required by section 21, Act 555 of 1953, and *Koelsch* v. *Arkansas State Highway Commission,* 223 Ark. 529, 267 S. W. 2d 4.

After the alleged assault had been committed and the arrests made on Main Street, between 5th and 6th streets, appellee was taken in a squad car to police headquarters. Appellant offered to prove by Smith and Glasscock that while the difficulty was being discussed at headquarters appellee called appellant a ......... ......... liar, and he also said to Orr "I'll see you later." The offer of this testimony was refused by the court. We understand from appellant's brief that he considers the

proffered testimony admissible under the *res gestae* rule, but it is not specifically so stated. At any rate, we think the testimony was not admissible under that rule. Such words were not spoken at the time or place the assault was made, and constituted no part of it. See: 20 Am. Jur. Evidence, § 662; *Coca Cola Bottling Co.* v. *Carter,* 202 Ark. 1026, 154 S. W. 2d 824; *Toney* v. *Raines,* 224 Ark. 692, 275 S. W. 2d 771, and; *Williams* v. *Martin,* 226 Ark. 431, 290 S. W. 2d 442. It is also urged that said testimony should have been admitted to show appellee's insulting behavior and disrespect for the law, but we cannot agree. After all, the question was did appellant use more force than was necessary in dealing with appellee, and, in doing so, did he act wilfully and maliciously? It might well be that if appellee does have no respect for the law (although the words he is alleged to have used do not necessarily so indicate) he would be inclined to resist appellant's effort to arrest him and cause trouble in general, but it was proper for the jury to consider only what appellee did and not what he might have been inclined to do.

*Three.* Instruction No. 1 given by the court reads as follows:

"In making the arrest of a person for a misdemeanor or in preventing his escape, a police officer may exert such physical force as is necessary on the one hand to effect the arrest by overcoming the resistance he encounters, if any; or, on the other hand to subdue the efforts, if any, of the prisoner to escape."

"If you find, therefore, from a preponderance of the evidence, that the defendant, Verble Orr, used more force than was necessary in making the arrest of Crane Walker or in subduing the efforts, if any, of Crane Walker to escape, and that such force was not necessary to save his own life or to prevent great bodily harm to himself, and if you further find that as a result of the use of such unnecessary force, if any, the plaintiff, Crane Walker, was injured and damaged thereby, you should return your verdict in fa-

vor of the plaintiff, unless you find for the defendant under some other instruction of the court."

Appellant's specific objections to the above instruction were: (a) There was no evidence that appellee attempted to escape. We find, however, that appellant himself said he thought appellee "was just taking off, ignoring my order. I took his license number . . ." (b) It is objected that there is not any evidence at all to substantiate that any great bodily harm was done to appellee. The testimony we have heretofore set out shows this objection to be without merit. (c) We see no merit in appellant's objection that the instruction "leaves the impression or inference with the jury that Officer Orr had no right to use any force at all in making the arrest of the plaintiff, unless such force was necessary to save his own life or prevent great bodily harm to himself." The first paragraph of the instruction copied above negatives any such impression or inference. We found no reversible error in the instruction.

*Four.* There was no reversible error in the court's refusal to give appellant's requested instruction No. 10. The last portion of this instruction reveals its inherent defect. It reads:

". . . so if you find from the evidence in this case that the plaintiff violated the law, and that he resisted his arrest or assaulted the officer attempting to arrest him then you are instructed to find for the defendant, even though you should also find from the evidence that the plaintiff did receive some injury."

This instruction would excuse appellant even though he used more force than was necessary, and did so maliciously. This requested instruction, if it had been given, would have clearly been in conflict with instruction No. 1 previously copied and approved.

Since we find no reversible error indicated in any of the grounds relied on by appellant, the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.

874

HOLT and GEORGE ROSE SMITH, JJ., not participating; ROBINSON, J., dissents.

SAM ROBINSON, Associate Justice, dissenting. The principal issue in this case is whether Officer Orr used more force than necessary in placing Walker under arrest. If the officer did use excessive force, then there arises the question of whether Walker provoked the assault. If so, then such provocation should be considered on the issue of the amount of damages. It will be recalled that the jury verdict is for only $100 actual damages, but $400 punitive damages.

In arriving at the verdict, the jury should have had the benefit of all competent, relevant and material evidence offered at the trial shedding light on whether Walker provoked the assault. In my opinion, the proffered testimony of Chief of Police Gene Smith and Officer Glasscock is enlightening and would have been helpful to the jury in arriving at the verdict. The proffered testimony would have shown that at police headquarters a few minutes after Walker was arrested, he cursed Officer Orr with a vile oath. It would have shown Walker's belligerent attitude and would have shed light on who was the probable aggressor. In determining whether the occurrence at police headquarters is admissible, other evidence should be taken into consideration.

Officer Orr, speaking of the arrest, testified: "Then I told him, 'You are under arrest.' When I told him he was under arrest, I took him by the left arm with my right hand, started across the street. My intention was going to the call box at 5th and Main. When I took about three steps, he jerked loose and said, 'I am not going with you anywhere,' and he was in motion which I thought at the time he was fixing to hit me, so I with my left hand open, I more or less pushed the fellow, I slapped him and pushed him at the same time on the right side of his face. That was to throw him off balance to keep him from hitting me and when he didn't put up any further fight, I took him by the arm again and took about three steps when his brother-in-law run up from behind me."

Even at the trial of the case Walker showed his belligerent character. He testified: "I told him [meaning Officer Orr] the car wasn't moving." And he further testified that even at the time of the trial he would like to hit Officer Orr a few blows. It was shown from the testimony that after Officer Orr placed Walker under arrest, Walker's wife and his brother-in-law interfered. Officer Orr placed them under arrest. Walker testified that the officer grabbed his wife by the arm, told her that she was under arrest, and Walker added: "* * * the officer grabbed her by the arm and told her she wasn't going anywhere, she was under arrest and then I grabbed her by the arm and pushed him away and told him to keep his hands off my wife." Walker further testified:

"Q. What did you mean when you told the officer not to put his hands—take his hands off your wife?

"A. I meant I probably would have killed him if he laid his hands on and hurt my wife.

"Q. Would you have used the pocket knife?

"A. I would have probably used anything at my means to protect my wife."

The proffered testimony of Chief Smith and Officer Glasscock was to show the mental attitude of Walker at the time, as shedding light on the question of whether Walker provoked the difficulty. In *Missouri Pacific R. Co.* v. *Heard,* 185 Ark. 1055, 1062, 50 S. W. 2d 971, this Court said: "Where there are no circumstances which tend to mitigate or excuse insulting and profane language to another, malice will be implied, * * *." The rationale of this statement is that circumstances may mitigate exemplary damages. Certainly, if Officer Orr, without fault or carelessness on his part, believed he was about to be struck by Walker, and acting on such belief, struck Walker, such action on Orr's part would not be without mitigating circumstances. The proffered testimony of Chief Smith and Officer Glasscock, if admitted in evidence, would have had a tendency to show Walker's belligerent character and attitude at the time of his arrest, and would have aided the jury in determining whether

there were mitigating circumstances in connection with Officer Orr's action in striking Walker.

In 15 Am. Jur. 794, it is said: "Since exemplary damages are given only by way of punishment to an evil doer, all circumstances tending to prove that the defendant was without evil design, or though such design is admitted, to mitigate its existence are admissible in evidence, either to show that punitive damages should not be allowed, or if allowed, that they should be more restricted than if he had acted without provocation and in the absence of mitigating circumstances."

In my opinion the proffered testimony should have been admitted in evidence, and the case should be reversed because the evidence was excluded.