HURST *v.* FLIPPIN SCHOOL DIST. No. 26.

5-1562                                    312 S. W. 2d 915

Opinion delivered May 5, 1958.

*Thomas B. Tinnon,* for appellant.

*J. Loyd Shouse,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Wayne Hurst, had been operating a school bus for appellee, Flippin School District No. 26, for three years

prior to June 19, 1956, when they executed a written contract for the ensuing 1956-1957 term on a form prescribed by the State Department of Education. It was the same form they had previously used and provided that appellant should drive appellee's school bus in delivering children to and from school for $5.00 per day during the nine school months. beginning September 3, 1956, "over a route beginning at a point known as Oak Grove Bus Route and making stops as named on attached sheet and made a part hereof, taking on and letting off at each stop children designated by first party (district), on attached sheet. (Such schedule may be changed as necessity demands)." The Oak Grove Route began in the Oak Grove community where appellant resided and terminated at the school in Flippin, Arkansas. Under Section 7 of the contract appellant agreed to follow the instructions of the school principal "as to schedule, detours, or regulations governing the system of transportation." Under Section 10 the appellee district reserved "the right to change the routing of any bus, not exceeding one mile, without extra compensation."

A day or two after the beginning of school on September 3, 1956, it was determined that the bus on another of the five routes of the district was overloaded. Appellee decided to add 4 miles of this route to the one driven by appellant, which had less than a normal load, in order to properly apportion the number of pupils to the various buses and routes in accordance with departmental safety regulations. A controversy arose between the parties which resulted in appellant's refusal to continue driving the revised route on September 13, 1956. He brought this action on June 17, 1957, seeking $1,000 damages allegedly resulting from a breach of the employment contract and his wrongful discharge by appellee. Appellee filed a general demurrer to the complaint and an answer which contained a general denial and asserted that appellant's own misconduct and breach of the employment contract rendered its completion impossible. At the beginning of the trial before the court without a jury appellant accepted $44.10 tendered by appellee as payment for the 8 days he actually drove the bus in 1956.

This appeal is from a judgment for appellee based upon extensive findings to the effect that the written instrument constituted a valid and binding contract; that the proviso that a sheet be attached designating the bus stops did not constitute a material part of the contract and the failure to comply with it did not make the contract incomplete; that under Section 10 appellee had the right to make the four mile extension of appellant's bus route by the payment of extra compensation; that appellee recognized its obligation to make such payment and was willing and able to do so, but that appellant wrongfully refused to continue driving the bus before the parties had an opportunity to negotiate or reach the usual agreement concerning the amount of such extra compensation; that it could not be said from the testimony that appellee refused to pay additional compensation or that the amount thereof could not have been agreed upon had sufficient opportunity been given for a discussion of the matter; and that appellee did not discharge appellant without cause, nor in any manner breach the contract.

It is first contended by appellee that the trial court erred in refusing to hold that the writing relied upon did not rise to the dignity of a contract because: (1) It was never completed by attaching the route sheet as stipulated; and (2) it contained no formula for determining the additional compensation provided when a route was extended more than a mile. Appellant just as vigorously argues that the writing in plain and unambiguous language precluded the appellee from adding more than one mile to the Oak Grove Bus Route under any circumstances; and that the court's holding that such right was implied from the language of Section 10 is contrary to the law of contracts in that it purports to obligate the parties to make an agreement other than the one they actually executed. There would perhaps be much merit in either of these contentions if the instrument in question is construed without regard to the construction the parties themselves had placed upon it, and identical writings, over a period of several years. It must be conceded that the meaning of Section 10 of

the contract is indefinite and ambiguous as to appellee's right to add more than a mile to a bus route and the method of determining the amount of extra compensation to be paid. We agree with the trial court's finding that the right to add more than a mile to a route is implied from the language of the section, but the exact meaning is nevertheless doubtful.

It is well settled by our decisions that, in construing a contract the meaning of which is doubtful, the construction placed thereon by the parties to it, as reflected by their words and acts, must be given consideration. See cases cited in *Lutterloh* v. *Patterson*, 211 Ark. 814, 202 S. W. 2d 767, where we approved this statement from 12 Am. Jur. 787: "In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms." We have also repeatedly approved the following rule in 6 R. C. L. 853 as set out in *Temple Cotton Oil Co.* v. *So. Cotton Oil Co.*, 176 Ark. 601, 3 S. W. 2d 673: "In fact, where, from the terms of the contract, or the language employed, a question of doubtful construction arises, and it appears that the parties themselves have practically interpreted their contract, the courts will generally follow that practical construction. It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights, and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions. It has even been said that the

practical construction of the ambiguous terms of a contract will be adopted, although the language used may more strongly suggest another construction.''

Another familiar rule is that where a jury is waived and the case tried before the judge sitting as a jury, his finding on a question of fact is as conclusive on appeal as a jury verdict and will not be disturbed, if there is any substantial evidence to support it. We must also give the evidence adduced on behalf of appellee the strongest force that it will reasonably bear in determining whether there is substantial evidence to support the judgment. *Wallis* v. *Stubblefield,* 216 Ark. 119, 225 S. W. 2d 322.

Under the undisputed testimony the parties waived performance of the provision relative to the attachment of a route sheet to the employment contract designating bus stops for the very practical reason that there was no way to determine in June what the schedule of stops might be in the following September.

There is also substantial evidence to support the conclusion that the parties themselves construed the ambiguous Section 10 as authorizing appellee to extend appellant's bus route more than a mile by the payment of extra compensation. For several years, and under the identical contract, it had been a common practice, acquiesced in by the various drivers, to make such extensions and changes in routes by the payment of extra compensation fixed by negotiations between the driver affected and the board of directors of the district. In this connection it was shown that immediately prior to the change ordered by appellee in September, 1956, the appellant was driving a 48-passenger bus carrying 35 children while the driver on the Bull Shoals Route was transporting 65 children in a 48-passenger bus in violation of departmental safety regulations. By addition of the four miles to appellant's route the passenger load was equalized and appellant was only required to drive 41.4 miles per day which was still 2.5 miles below the average of 43.9 miles for all the drivers. There is also persuasive evidence to the effect that appellant refused

to drive the extended route, or to enter into any negotiations with the board of directors relative thereto, because the change required him to begin work 20 minutes earlier and to devote less time to his rather extensive farming operations; and not because of any possibility that he and the appellee might not reach an agreement on the amount of extra compensation to be paid. It is also clear that he studiously avoided any negotiations with the directors as to the amount of extra compensation to be paid, although he testified, on cross-examination, that he had never denied appellee's right to make the 4-mile extension in question.

When the instant contract is construed in the light of the interpretation given it by the parties themselves, as reflected by their acts and declarations, we are convinced the trial court correctly construed it; and that the evidence is substantial and sufficient to sustain the conclusion that appellee did not discharge appellant without cause or otherwise breach the employment contract.

We agree that appellee's supplemental abstract of the testimony was necessary and proper under rule 9, and the clerk will be directed to fix the brief costs in an amount sufficient to compensate for appellant's noncompliance with the rule in this respect.

The judgment is affirmed.

GEORGE ROSE SMITH and ROBINSON, JJ., dissent.